MONTGOMERY WARD & COMPANY, INCORPORATED, V.
THE STATE OF TEXAS.

No. 8123. Decided November 24, 1943.
(175 S. W., 2d Series, 218.)

*Goldsmith & Bagby,* of Austin, *John A. Barr, Harvey L. Hensel* and *L. E. Oliphant, Jr.,* all of Chicago, Ill., for petitioner.

The Court of Civil Appeals committed error in holding in one part of its opinion that the title to merchandise does not pass until the customer has examined and accepted same, while in another part of its same opinion it holds that a sale of merchandise to be delivered directly to the purchaser is complete at the order office when the order is placed, even though the merchandise has not been examined and accepted by the customer. It also erred in holding that in an order of merchandise by a customer through an order office, to be delivered direct to his home, the sale is completed at the order office, and all that is left to be done is delivery and acceptance by the customer. Cuero Cotton Oil & Mfg. Co. v. Feeder's Supply Co., 203 S. W. 79; Dallas Waste Mills v. Early-Foster Co., 218 S. W . 515; Keller v. State, 87 S. W. 669.

*Gerald C. Mann,* Attorney General, *Cecil C. Roth* and *Billy Goldberg,* Assistants Attorney General, for respondent.

In the matter of a sale title does not pass until the customer looks at the merchandise and it meets his satisfaction and title does not pass until such satisfaction is gained or waived. 55 C. J. 430; Williams v. Mutual Motor Co., 67 S. W. (2d) 905; 46 Am. Jur., 592.

MR. JUDGE TAYLOR, of the Commission of Appeals, delivered the opinion for the Court.

This action was brought by the State of Texas, respondent, to recover additional chain store taxes alleged to be owing by petitioner, Montgomery Ward & Co., Inc., because of its operation in this state of mail order offices. The courts below rendered judgment in favor of respondent for the amount of taxes sued for, the Court of Civil Appeals affirming the trial court's judgment. 169 S. W. (2d) 997.

The only question involved is whether petitioner's mail order offices are stores within the meaning of the Texas Chain Store Tax Statute (codified as article 1111d of Vernon's Annotated Penal Code of Texas).

The facts were agreed to and stipulated by the parties. The Court of Civil Appeals incorporated in its opinion somewhat

at length the agreed facts purporting to show the character of business done at the mail order offices. An abbreviated statement of the stipulations (deemed sufficient for present purposes) is as follows:

"V. * * * Each of such 'mail order offices' consisted of a room or building facing a street in the business section of a town, which room or building was rented by Montgomery Ward & Co., Incorporated, * * * by a lease contract giving Montgomery Ward & Co. * * * control thereof, and in each of which * * * there were several of the regular 'Montgomery Ward & Co. * * * Mail Order Catalogs'. * * * Such catalogs inform the customers that orders must be sent to the company's mail order house at Fort Worth, Texas, for acceptance, and that the merchandise ordered will be shipped from there * * *. Also stationed in each of said mail order offices was one or more employees of said company. No merchandise of any kind was ever stocked for sale in any of said mail order offices. * * *

"VI. During all of the times in question afore-mentioned customers came in to each of said mail order offices and ordered merchandise through such catalogs from the company's Fort Worth * * * mail order house. The sales resulting from such orders were made in the following manners:

"In all cases of customer's ordering merchandise through an order office, the customer may make out an order * * *. All orders received through the company's * * * mail order offices are forwarded to the company's mail order house at Fort Worth, * * *, where they are accepted or rejected, and, if accepted, the merchandise ordered is segregated and appropriated to the customer's orders, and the merchandise is shipped in accordance with the customer's instructions contained in their orders. * * *.

"The sales resulting from such orders may be (1) cash sales, (2) c.o.d. sales, or (3) credit sales. If it is to be a cash sale, the customer will deposit with the company's employee at the order office the purchase price, plus transportation charges. If it is to be a credit sale, the customer will deposit with the employee at the order office a down payment. * * * If it is to be a c.o.d. sale, no money is deposited * * * at the order office. On c.o.d. sales payment is made by the customer to the carrier or post office if shipment of the merchandise is made direct to the customer; or, if the customer has requested that the merchandise be sent to him in care of th order office, the purchase price plus the transportation charges are collected from the customer

at the time the customer calls for his merchandise at the order office.

"Merchandise sold as a result of orders received at said order offices may be shipped (1) direct to the customer or (2) to the customer in care of the order office through which the order was received, as requested by the customer. * * *

"Customers requesting that the merchandise be shipped direct to them, as well as customer's requesting that the merchandise be sent to them in care of the order office through which the order was received, may open their packages and examine the merchandise. All customers who are not satisfied with the merchandise may return it to the mail order house. The customers who open their packages at said mail order offices, and who were not satisfied with the merchandise ordered, did not take the merchandise, but left it at the mail order office and the company's employee returned it to the mail order house. If said customers had previously paid such amount due on such merchandise, their money was refunded to them. All of the company's catalogs including those kept in the order office, contain the following written guarantee under which such returns of merchandise are permitted:

" 'We guarantee complete satisfaction or your money back. What ever you may buy from us must please you in every way— or you may return it at our expense and we will either exchange it for what you want or refund all you paid, including any trans-portation charges paid by you.' * * *."

The chain store tax statute, insofar as applicable here, provides that "every * * * corporation, * * * operating * * * one or more stores * * * within this state, under the same general management, * * * shall pay the license fees * * * prescribed for the privilege of * * * operating * * * such stores * * *"; and defines the term "store" as used in the act to mean "any store * * or * * * mercantile establishment * * * not specifically exempted within this act * * *, operated * * * by * * * the same * * * corporation, * * * in which goods, wares or merchandise of any kind are sold * * *."

The[6] state contended, and the Court of Civil Appeals held, that the company's offices as operated in carrying on its mail order business in the state, are "stores" as that term is defined by the taxing statute, and hence within the coverage of the statute. The company admitted in its brief that if under its plan of conducting its mail order business the sale of the goods

occurred at the order office the state's suit was well founded. It argued that since a sale is a transaction in which title is transferred from seller to buyer, and that since in this case there is no doubt that title is so transferred during every sale, the fact as to *when* title passed is an essential inquiry. It admitted that if title did not pass until the goods were given to the customer at the order office then the sale was made there; but contended that under the stipulated facts as to the manner of carrying on its mail order business, title to the goods passed from the company to the buyer when the goods were appropriated to the customer's contract at the Ft. Worth order house and delivered to the carrier for shipment to him.

The company argued in support of its position, that, since the contract of sale did not specify where title to the goods ordered at the order office would pass to the customer, the intention of the parties as manifested by the terms of the agreement and the circumstances surrounding the sale transactions would have to be looked to in determining when title passed; and argued that the stipulations disclosed an intention to have title pass at the mail order house, the customer's goods being segregated there by the seller and there appropriated to the customer's order, the transportation charges on the goods ordered by the customer being paid by him, and the company's books reflecting that it treated the goods thus appropriated to the customer's orders at Ft. Worth house as sales made there. The company contended in this connection that inasmuch as tax statutes containing penal provisions are required to be strictly construed the present statute, in case there is any doubt as to its meaning, must be construed liberally in its favor.

The State, while viewing the statutory provisions involved here as sufficiently clear to obviate the necessity of resorting to any rule of construction other than to be guided by the legislature's reasonably clear intention as manifested by the language used, pointed out that such statutes "are not to be construed like penal laws generally * * * but are to be fairly and reasonably construed so as to carry out the intentions of the legislature," citing among other authorities the recent case of Trinity Portland Cement Company v. State, 144 S. W. (2d) 329, in which writ of error was refused by this Court.

The state countered with three reasons the company's contention that according to its method of making the mail order sales in question they are made at the Ft. Worth order house, the first reason being substantially that inasmuch as title to the

merchandise passes to the customer at the order office the sale is made there. Under our view of the matter presently to be stated it will be necessary to consider this reason only.

The reason inheres in the company's guarantee appearing in all of its catalogs as a part of its mail order selling plan. The guarantee is set out above as the concluding paragraph of the agreed stipulations of the parties. It will be observed that it is to the effect that the company guarantees to the customer "complete satisfaction or your money back." The paragraph of the stipulations immediately preceding the guarantee states that a customer who has received the merchandise at the office where he placed the order (subject to the guarantee) has the privilege, before accepting the merchandise, to open and inspect it, and, if not satisfied, leave it there to be returned to the company at the mail order house. Based upon the foregoing stipulation made in connection with the guarantee the State urges that title to the goods, when they are accepted by the customer at the order office, passes from the seller to the buyer there, since the contract between the parties is "in the nature of an option to purchase if the goods prove satisfactory," and since the "approval of the buyer" is a condition precedent to consummating the sale.

The company accedes in its brief that "if the sales were sales on approval title would not pass until the customer gave his approval"; but contends that under the stipulations the sales in question are on the basis of "sales or return" and not on the basis of "sales on approval."

The Court of Civil Appeals held that the sales in question were sales on approval; and that even when the tax statute is construed in which the sale of merchandise takes place, the order office comes within the statute, under the holding in Hurt v. Cooper, 130 Texas 433, 110 S. W. (2d) 896.

The Court predicated its holding upon its conclusion, substantially, that the facts stipulated show that the intent of the parties dealing through the medium of the order offices was that title to the merchandise ordered should pass when the customers examined and were satisfied with it and accepted it. Writ of error was granted upon the insistence of the company under its fourth point of alleged error to the effect that the Court, after so holding, set forth a "new theory" based on the view that title passed at the order office *before the merchandise was delivered to the customer for his examination and acceptance.* It was

urged that the writ be granted so that it might be determined which theory, if either, was correct.

Upon final consideration we are unable to agree that the alleged inconsistency exists. The Court was within the stipulated facts (as we understand their perport), and consistent, when it stated that the sale was "completed * * * at the order offices," that is, consummated there. When the Court in connection with the quoted statement inquired in effect how the manner of delivery could alter the status of "a sale already agreed upon," it was still within the stipulated facts and was not inconsistent, since as shown by the stipulations, the terms which had been agreed upon included an option on the part of the customer to examine the merchandise at the order office and to there accept it, that is, to there complete the sale by such acceptance. The Court did not either say or imply that other acts were not to be performed in the process of consummating the sale, such as segregating the merchandise at the mail order house to the customer's order, and delivery, after segregation, to the carrier for shipment to the customer at the order office. The customer still had the privilege after all of this had been done by the company, to inspect the goods and refuse to consummate the sale. In other words, until acceptance after examination, the sale had not been completed, or made. The point the Court was making in connection with its above quoted inquiry was that the process of consummating the sale, or the manner of making delivery, could not alter the status of "a sale already agreed upon," which status included in the terms of the agreement the customer's option to subsequently examine the goods at the office where they were ordered and accept them if he was completely satisfied. The inquiry was propounded by the Court as one having an obvious answer.

■ We approve both the holding and reasoning of the Court of Civil Appeals that title to the merchandise passes, under the company's sales plan, at the order office when the customer examines and accepts it there. The company does not part with its control of the merchandise until that time.

We overrule the company's point alleging that the Court of Civil Appeals erred in failing to hold that its sales are made on a "sale or return" basis. It is urged in support of its allegation of error, that the courts have consistently held that contracts similar to those under consideration are contracts of "sale and return." We cannot agree. It is not so held in this state.

■ Contracts for sale on approval are generally construed to mean that title shall continue in the seller until the sale has become absolute by the buyer's approval of the goods. 46 Am. Jur.—Sales—Sec. 493; 52 A. L. R. Anno.—Sales or Return—On approval, p. 604. It is stated in Corpus Juris (Vol. 55,—Sales— sec. 591) that a sale on * * * approval is in the nature of "an option to purchase the goods if they prove to be satisfactory, or a sale on condition precedent, and * * * its operation as regards the transfer of title is to be distinguished from what is commonly known as a sale or return." It is stated in the succeeding section (592) that "a * * * contract of sale or return is in the nature of a sale with option to return, or a sale on condition subsequent. It is distinguished from * * * sale on * * * approval, and a bailment." The rule is stated (sec. 591) to be that, unless a different intention appears, "where goods are sold on * * * approval * * * the property therein does not pass until the buyer has * *•* manifested his * * * acceptance * * *." As pointed out in the opinion of the Court of Civil Appeals the foregoing rule is well settled in this State. Oliver v. Gallagher, 119 Texas 178, 26 S. W. (2d) 903.

This is not a case, as we view the stipulations, in which the purchaser accepts title with an option to rescind. There is a marked difference, well recognized, between the contract which provides an option on the part of the customer to accept the merchandise and the contract under which he accepts the merchandise with option on his part to rescind. The difference in the two types of contracts is clearly stated in Montgomery Ward & Co. Inc. v. State Commissioner of Revenue and Taxation, 156 Kan. 408, 133 Pac. 1008 as follows:

"There are two rules with reference to this general type of sales. One is known as a contract of sale or return, that is, where the sale is made with an option to return. In those cases the title passes to the buyer and the sale is completed upon delivery to the carrier regardless of the fact that the customer has a right to return the merchandise. The other is a sale on trial or approval. These are cases where the contract is to purchase certain goods if they prove to be satisfactory when delivered. In these cases the title does not pass until the buyer has expressly or impliedly expressed his approval or acceptance."

In the present case not only is "complete satisfaction or your money returned" guaranteed to the customers, but it is stipulated that under the company's sales plan "customers requesting that the merchandise be sent to them in care of the order office through which the order was received, may * * * examine

the merchandise," and that "all customers who are not satisfied with the merchandise may return it to the mail order house." The stipulations disclose clearly that the transaction authorized by the company through its order office is a *sale on approval* transaction and not a *sale or return* transaction. We so hold.

It follows from what we have stated that a sale made under the procedure just discussed, since title to the merchandise does not pass from the company to the customer until the latter has approved it upon examination at the order office, is a sale at that office, that is, at the company's "store" as that term is defined by the tax statute.

■ The conclusion reached in this case is the same as that reached by the Supreme Court of Kansas in Montgomery Ward & Co., Inc., v. State Commissioner of Revenue, supra. The same type of "order offices" is involved in both cases. The decision in the Kansas case, as in the present case, turns upon the question of to where title to the goods passes. In the Kansas case it was decided that title passes in the order offices and that, therefore, the goods are sold there. The Court of Civil Appeals reached the same conclusion in the present case about the same time. We are in accord with its decision.

Since all of the Company's order offices operated in the State are "stores" within the meaning of the taxing statute, it is liable to the State, as held by the Courts below, for the amount of additional taxes sued for.

The judgment of the Court of Civil Appeals affirming that of the trial court, is affirmed.

Opinion adopted by the Supreme Court November 24, 1943.