**In the Matter of BILDISCO, a General Partnership of the State of New Jersey, Debtor.**

**GERBER INDUSTRIES, INC., Plaintiff,**

**v.**

**BILDISCO, a General Partnership of the State of New Jersey, and Congress Financial Corp., Defendants.**

**Bankruptcy No. 80–0215.**

United States Bankruptcy Court, D. New Jersey.

Nov. 24, 1980.

McLaughlin & Mayers by John J. McLaughlin, Millburn, N.J., for plaintiff Gerber Industries, Inc.

Ravin, Katchen & Greenberg by Richard B. Honig, Newark, N.J., for defendant–debtor Bildisco.

Kleinberg, Moroney, Masterson & Schachter by Walter J. Greenhalgh, Millburn, N.J., for defendant Congress Financial Corp.

## OPINION

AMEL STARK, Bankruptcy Judge.

On April 14, 1980, Bildisco, a general partnership of the State of New Jersey ("Bildisco") filed a Petition in Bankruptcy under Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the District of New Jersey. An Order for Relief was entered on the same day.

Pursuant to a consent judgment, an order was entered by this court on April 17, 1980 granting Congress Financial Corporation ("Congress") a judgment validating their security interest in various assets of the debtor estate. On April 25, 1980 the aforesaid order was modified to reflect a corrected interest figure.

Thereafter, within the allotted time, Gerber Industries, Inc. ("Gerber") commenced an adversary proceeding against Congress and the debtor–in–possession, Bildisco, pursuant to Rule 701(1), of the Bankruptcy Code, for the purpose of extricating goods, in possession of Bildisco, from Congress' lien.

Plaintiff Gerber's complaint alleges superior rights to the goods in question by virtue of its characterization of said goods as "consigned inventory." While denying plaintiff's claim of right, neither defendant's answer objects to this characterization of the goods.

Plaintiff Gerber seeks (1) relief from the automatic stay; (2) appropriate modification of the Orders of April 18, 1980 and April 25, 1980; and (3) surrender of the subject matter goods.

## FINDINGS OF FACT

1. Since December 14, 1976, defendant Congress has continuously held a perfected security interest in debtor–defendant Bildisco's after acquired inventory.

2. Prior to filing its petition in bankruptcy, debtor–defendant Bildisco received goods from plaintiff Gerber pursuant to a written agreement styled "Consignment Sale Agreement" executed by the parties on October 31, 1979.

3. Plaintiff Gerber neither posted a sign declaring its ownership of the goods, nor was debtor–in–possession–defendant Bildisco generally known by its creditors to be a seller of the goods of others.

4. Plaintiff Gerber filed Financing Statement with New Jersey's Secretary of State, but did not give defendant Congress actual notice of the consignment.

5. The Amended Order of April 25, 1980, was a determination that defendant Congress was the holder of a valid secured lien against all inventory in the possession of the defendant–debtor, Bildisco, as of April 4, 1980. This is disputed by plaintiff Gerber.

## CONCLUSIONS OF LAW

### I.

The Court commences by assuming that the agreement between plaintiff Gerber

and debtor–defendant Bildisco was a valid consignment or "sale or return" contract. This posture is all but mandated by the scant proofs offered by the litigants at trial. While the underlying purpose of this, or any "consignment" agreement, is a proper subject of judicial examination, it is difficult to deny that even a valid consignment agreement gives the seller/consignor "a kind of security interest . . . ." White and Summers, *Handbook of the Law Under the Uniform Commercial Code* 886 (1980).

## II.

New Jersey's adoption of Section 2–326 of the Uniform Commercial Code ("Code") reads, in pertinent part:

12A:2–326. Sale on Approval and Sale or Return; Consignment Sales and Rights of Creditors

(1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is

(a) a "sale on approval" if the goods are delivered primarily for use, and

(b) a "sale or return" if the goods are delivered primarily for resale.

(2) Except as provided in subsection (3), goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.

(3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum." However, this subsection is not applicable if the person making delivery

(a) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or

(b) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or

(c) complies with the filing provisions of the Chapter on Secured Transactions (Chapter 9).

## III.

N.J.S.A. 12A:9–312, entitled "Priorities Among Conflicting Security Interests in the Same Collateral," provides in subsection (3):

(3) A purchase money security interest in inventory collateral has priority over a conflicting security interest in the same collateral if

(a) the purchase money security interest is perfected at the time the debtor receives possession of the collateral; and

(b) any secured party whose security interest is known to the holder of the purchase money security interest or who, prior to the date of the filing made by the holder of the purchase money security interest, had filed a financing statement covering the same items or type of inventory, has received notification of the purchase money security interest before the debtor receives possession of the collateral covered by the purchase money security interest; and

(c) such notification states that the person giving the notice has or expects to acquire a purchase money security interest in inventory of the debtor, describing such inventory by item and type.

## IV.

An exhaustive search of decisional law reveals no case on point permitting direct resolution of the sole question before the Court; does New Jersey's adoption of the Uniform Commercial Code (largely the 1962 text) require filing *and* actual notice to

prior secured parties? An affirmative answer will, by operation of law, subject the consigned goods to claims of the debtor's creditors, defendants Bildisco and Gerber, respectively.

## V.

In its brief, defendant Congress commends to the Court the case of *Manufacturer Acceptance Corp. v. Penning's Sales, Inc.*, 5 Wash.App. 501, 487 P.2d 1053 (1971); in this matter a holder of an after acquired property lien successfully attached consigned goods in the hands of a consignee by virtue of the consignor's failure to give actual notice to prior secured parties as required by a state statute substantially identical to N.J.S.A. 12A:9–312(3). The court in *Manufacturer Acceptance, supra,* bridged the conceptual gap between Articles 2 and 9 of the Code by finding that the consignor had secured the price of the goods by retaining their title, *Id.* at 1058.

The variety of results and conclusions offered by commercial law commentators bespeaks the uncertainty of the law of consignments *See e. g.* White and Summers, *Handbook of the Law Under the Uniform Commercial Code* 888 (1980). Indeed, both by declaration and implication, many reported decisions suggest the contradictory concept of "consignment sale." *See Bender's U.C.C. Service,* § 4A.05[1] Note 98 (1980).

The New Jersey statutes cited *supra* are adopted from the 1962 Uniform Commercial Code. As a comprehensive body of law the Code should resolve all questions of commercial law. Hawkland, *A Transactional Guide to the Uniform Commercial Code,* § 2,32030204. Since Article 2 of the Code is silent on priorities, Article 9 of the Code must control. Hawkland, *Uniform Commercial "Code" Methodology* 1962 U.Ill.L.F. 291, 314–318.

## VI.

Any reasonable doubt as to the applicability of Article 9 of the Code (and N.J.S.A. 12A:9–312) can be resolved by considering section 9–114 of the Uniform Commercial Code and the related "Reasons for 1972 Adoption of New Section," 1972 Official Text (West 1972) which read:

(1) A person who delivers goods under a consignment which is not a security interest and who would be required to file under this Article by paragraph (3)(c) of Section 2–326 has priority over a secured party who is or becomes a creditor of the consignee and who would have a perfected security interest in the goods if they were the property of the consignee, and also has priority with respect to identifiable cash proceeds received on or before delivery of the goods to a buyer if

(a) the consignor complies with the filing provision of the Article on Sales with respect to consignments (paragraph (3)(c) of Section 2–326) before the consignee receives possession of the goods; and

(b) the consignor gives notification in writing to the holder of the security interest if the holder has filed a financing statement covering the same types of goods before the date of the filing made by the consignor; and

(c) the holder of the security interest receives the notification within five years before the consignee receives possession of the goods; and

(d) the notification states that the consignor expects to deliver goods on consignment to the consignee, describing the goods by item or type.

(2) In the case of a consignment which is not a security interest and in which the requirements of the preceding subsection have not been met, a person who delivers goods to another is subordinate to a person who would have a perfected security interest in the goods if they were the property of the debtor.

Reasons for 1972 Adoption of New Section

An *uncertainty* has existed under the 1962 Code whether the filing rule in Section 2–326(3) applicable to true consignments requires only filing under Part 4 of Article 9 or also requires notice to prior

inventory secured parties of the debtor under Section 9–312(3). The new Section 9–114 accepts the latter view, and provides in substance that, in order to protect his ownership of the consigned goods, the consignor must give the same notice to an inventory secured party of the debtor that he would have to give if his transaction with the consignee was in the form of a security transaction instead of in the form of a consignment. This new section follows closely the language of Section 9–312(3) (Emphasis added)

Plaintiff Gerber argues that the absence of the new section on consignments evinces New Jersey's reluctance to require consignors to give actual notice to prior security interest holders. The Court disagrees. Section 11–108 of the 1972 version of the Uniform Commercial Code reads:

> § 11–108 Presumption that Rule of Law Continues Unchanged Unless a change in law has clearly been made, the provisions of [new U.C.C.] shall be deemed declaratory of the meaning of [old U.C.C.]

The word "uncertainty" in the reasons for the adoption of the 1972 section 9–114 of the Code suggests no clear change in the law; the word "accept" is thus supportive of decisional law requiring actual notice to inventory secured creditors. *See, e. g. Manufacturers Acceptance Corp. v. Penning's Sales, Inc.* supra.

The Supreme Court of New Jersey in *IAC, Ltd. v. Princeton Porsche–Audi*, 75 N.J. 379, 382 A.2d 1125 (1978) announced its willingness to "accord some deference to the view of the [Uniform Commercial] Code drafters where they might shed light on the instant problem." [*Id.* at 386–387, 382 A.2d 1125]

## VII.

The 1972 Amendments to the Code have been enacted by no less than thirty–one states. We are further comforted by the fact that the New Jersey Assembly passed the 1972 revisions on September 26, 1980.

## CONCLUSION

We are inexorably lead to the conclusion that goods consigned by plaintiff Gerber in the hands of debtor–defendant Bildisco are subject to claims of Bildisco's creditors.

IT IS SO ORDERED. Let an Order in conformity with this Opinion be submitted by the attorney for defendant Congress Financial Corp.