Danny **FULLER** d/b/a Danny's Factory Outlet, Appellant,

v.

**TEXAS WESTERN FINANCIAL CORPORATION, Appellee.**

No. 1533.

Court of Appeals of Texas, Tyler.

May 13, 1982.

Rehearing Denied June 17, 1982.

Charles H. Clark, Tyler, for appellant.

Harry J. Martin, Jr., Hunter, Drake, Stewart, Salzberger & Vineyard, Dallas, for appellee.

McKAY, Justice.

Texas Western Financial Corporation (Texas Western) brought suit against Danny Fuller d/b/a Danny's Factory Outlet (Fuller) for certain goods, wares and materials, alleging that Texas Western was an assignee of Amcrest Textiles, Inc. (Amcrest). After generally denying the allegations, Fuller pled that there was no proper pleading or notice of assignment to Texas Western, and that the manner in which Fuller did business was by consignment only. After trial before a jury judgment was rendered for Texas Western for $4,516.07, and Fuller brings this appeal.

The jury found (1) the balance due Texas Western from Fuller on account of transac-tions between Texas Western, Amcrest and Fuller was $4,516.07; (2) the sum of money to compensate Texas Western's attorneys was "0"; and (3) the merchandise received by Fuller from Amcrest was received under a consignment agreement. The jury refused to find that Texas Western gave Fuller notice of Amcrest's assignment of his account.

Fuller brings two points of error: the trial court erred (1) in overruling his motion that the court render a take-nothing judgment against Texas Western, and (2) in rendering judgment for Texas Western for $4,516.07. We overrule both of these points of error.

Fuller opened a business known as Danny's Factory Outlet in Mineola, Texas, in February, 1976, and approximately sixteen days later the contents of the building were destroyed by fire. Some of Fuller's inventory had been obtained from Amcrest, and Texas Western claimed to be the owner of Amcrest's accounts. Amcrest also did business under the name of Prints Charming, Inc. Fuller's business was also known as Danny's Drapery Outlet. Fuller received $15,000 from his insurance carrier as a result of the fire.

A number of invoices from Amcrest addressed to Fuller were introduced in evidence. Most of them were dated in January and February, 1976. The invoices below the invoice number contained the words "PAY BY THIS INVOICE" and "STATEMENT UPON REQUEST." Under "Terms" was typed in "net 30." At the bottom of the invoice was printed "no returns will be accepted unless authorized in writing by this office."

Fuller made a claim for insurance for loss of merchandise in the fire and listed as a loss goods itemized on some of Amcrest's invoices. He further said the goods listed in invoices 1034, 1035, 1036 and 1037 were not in the store when it burned because they had been picked up for Amcrest by Jerry Brooks, but they were the only invoices he had and he was told to submit them with his claim for insurance. He said his total loss was $50,000 but he received only

$15,000 from insurance. He testified that his agreement with Amcrest was: "Anything that I sold I would get a percentage of. It was on consignment." He further said he paid only for the goods he sold, and if he could not sell them Frank Johnson (whom he said worked for and owned Amcrest) would pick them up.

Texas Western sued Fuller for the sum of $12,838.97 and introduced invoices which total that amount. Fuller disputed some of the invoice items, and the jury concluded that the balance due Texas Western was $4,516.07.

It is Fuller's position that the finding by the jury of the existence of a consignment agreement covering all of the merchandise received from Amcrest defeats the cause of action of Texas Western, and he argues that the goods involved here were not sold or leased but instead were placed with Fuller on consignment under an agreement that goods sold would be paid for and those not sold would be returned to Amcrest. It is our view that the transaction was a sale as a matter of law under arts. 2.326(c)[1] and 2.327(b)(1) and (2),[2] of the Tex.Bus. & Comm.Code Ann. (Vernon 1967), and therefore title passed to Fuller. *Collier v. B & B Parts Sales, Inc.*, 471 S.W.2d 151, 153 (Tex.Civ.App.—Tyler 1971, no writ). Neither Fuller's exhibit No. 1 listing the percentage of the sale price to be retained by him nor Texas Western's exhibit No. 5 listing invoices and percentages constitute a consignment. The intention of the parties no longer seems to determine whether a

transaction was a sale or consignment under the U.C.C. *Bufkor, Inc. v. Star Jewelry Co.*, 552 S.W.2d 522, 524 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.); *Collier v. B & B Parts Sales, Inc., supra.*

The record reveals that Fuller maintained a place of business at which he dealt in goods of the kind Amcrest dealt, under a different name from the supplier. The record does not show that Fuller was known by his creditors to be substantially engaged in selling goods of others or that a consignor's interest was evidenced by a sign.

In 50 Tex.Jur.2d Sales, § 22, pp. 276–77 is found this language:

Under pre-code law, where there was a consignment, an owner of goods placed them in the possession of another under a contract for their sale and the return of the proceeds of sale, less a commission or discount, or for the return of the goods in case they remained unsold. The distinguishing characteristics of a consignment were that the consignee did not take title to the goods and was not obliged to pay the price unless he sold or otherwise disposed of them. . . .

Under the Uniform Commercial Code, many transactions that might have been regarded as consignments under former law will be regarded as sales. This is because of a code provision stating that where goods are delivered to a person for sale and he maintains a place of business where he deals in goods of the kind involved, under a name other than that of

---

1. (c) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum." However, this subsection is not applicable if the person making delivery

(1) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or

(2) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or

(3) complies with the filing provisions of the chapter on Secured Transactions (Chapter 9), or

(4) is delivering a work of art subject to the Artists' Consignment Act.

2. (b) Under a sale or return unless otherwise agreed

(1) the option to return extends to the whole or any commercial unit of the goods while in substantially their original condition, but must be exercised seasonably; and

(2) the return is at the buyer's risk and expense.

the person making delivery, the goods are deemed to be on sale or return, as regards claims of creditors of the person conducting the business.

In the pre-UCC case of *Concordia Fire Ins. Co. of Milwaukee v. McCarty Motor Co.*, 45 S.W.2d 446, 447 (Tex.Civ.App.—Amarillo 1931, writ dism'd), the court stated that a contract is known as "sale or return" contract where the property is sold, but could have been returned to the seller at the option of the buyer. The court held that a transaction vests title in the buyer and the buyer deals with the goods as his own.

The court in *Montgomery Ward & Co. v. State*, 141 Tex. 626, 175 S.W.2d 218, 222 (1943) quoted a Kansas case:

> There are two rules with reference to this general type of sales. One is known as a contract of sale or return, that is, where the sale is made with an option to return. In those cases the title passes to the buyer and the sale is completed upon delivery to the carrier regardless of the fact that the customer has a right to return the merchandise. The other is a sale on trial or approval. These are cases where the contract is to purchase certain goods if they prove to be satisfactory when delivered. In these cases the title does not pass until the buyer has expressly or impliedly expressed his approval or acceptance.

The U.C.C. in 2.326(c) follows the rule as set out in *Concordia Fire Ins. Co.* and *Montgomery Ward & Co., supra*. There were no instructions or definitions given the jury as to what constituted a consignment. In our view, however, the facts constitute a sale or return and the answer of the jury that there was a consignment agreement was properly disregarded by the trial court. Fuller concedes in his brief that "the goods . . . were placed with Defendant on consignment under an agreement that those goods sold would be paid for and those not

sold would be returned to Amcrest Textiles, Inc." Printed on the invoices were the words "Pay By This Invoice," and terms "net 30." *See* 1 Anderson, Uniform Commercial Code § 2–326:1 at 774 and § 2–326:8 at 779 (2d ed. 1970); Winship, "The 'True' Consignment Under the Uniform Commercial Code, and Related Peccadilloes," 29 SW.L.J. 825 (1976); Note, "Sale or Return v. Consignment—The Intention of the Parties Is No Longer Determinative of the Issue," 24 Baylor L.Rev. 288, 294 (1972).

Judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

In Fuller's motion for rehearing he argues that art. 2.326(c) [1] of the Tex.Bus. & Comm.Code applies only to creditors of the person conducting the business and that appellee Texas Western was never a creditor of appellant. Fuller therefore argues the provisions of art. 2.326(c) do not apply, and that the transaction was not a sale as a matter of law.

Appellee responds that even though it was not a direct creditor of Fuller, Amcrest (appellee's assignor) was a creditor of Fuller, and that appellee is now in Amcrest's shoes.

The question, therefore, is whether an assignee of a prior creditor is a creditor within the provisions of art. 2.326(c). The Tex.Bus. & Comm.Code defines "creditor" as follows:

> "Creditor" includes a general creditor, a secured creditor, a lien creditor and any representative of creditors, including an assignee for the benefit of creditors, a trustee in bankruptcy, a receiver in equity and an executor or administrator of an insolvent debtors or assignors estate. Tex.Bus. & Comm.Code Ann. art. 1.201(12) (Vernon 1967).

The security agreement between Texas Western and Amcrest provides as follows:

1. Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than a name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. . . .

2.1 To secure the payment of Borrower's [Amcrest's] Liabilities and Borrower's prompt, full and faithful performance and observance of all of the provisions to be kept, observed or performed by Borrower under this Agreement and the Other Agreements, Borrower hereby grants to Lender [Texas Western] a security interest in and to all of Borrower:

(a) existing and future accounts, chattel paper, contract rights and instruments (sometimes hereinafter individually and collectively referred to as "Accounts"), whether accounts are acceptable or unacceptable to lender and whether accounts are scheduled to lender on Schedules of Accounts or not, and all goods whose sale, lease, or other disposition by Borrower has given rise to any accounts and which goods have been returned to or repossessed or stopped in transit by Borrower;

Texas Western filed a Financing Statement designating it as a secured party due to this transaction with Amcrest.

Since Texas Western held Fuller's accounts by virtue of an assignment from Amcrest, it is a secured creditor under art. 1.201(12), and thus, comes within the definition of "creditor" under art. 2.326(c). Moreover, by filing a Financing Statement, Texas Western complied with Code provisions relative to perfecting its security interest in the accounts it was assigned by Amcrest. Amcrest, therefore, became a secured creditor under provisions of the Code and is a creditor of Fuller for purposes of applying the "on sale or return" language of art. 2.326(c).

The motion for rehearing is overruled.