**Mildred BRASHEAR, Appellant**

v.

**D CROSS B, INC., Appellee.**

**No. 2–85–202–CV.**

Court of Appeals of Texas,
Fort Worth.

May 29, 1986.

Lane, Ray, Getchell, Farris & Schleier and Thomas L. Farris, Fort Worth, for appellant.

Barlow & Garsek and Dwayne Hoover, Fort Worth, for appellee.

Before JORDAN, BURDOCK and ASHWORTH (Retired Sitting by Assignment), JJ.

## OPINION

BURDOCK, Justice.

Appellee, D Cross B, Inc. (Cross) brought suit against appellant Mildred Brashear (Brashear) for the conversion of a number of cowboy boots. The jury awarded Cross damages in the amount of $48,295.05.

We affirm.

The facts adduced at trial were as follows. Brashear's granddaughter and her granddaughter's husband (the Millers) formed a corporation for the purpose of establishing a western store. A loan in the amount of $270,000 was obtained from Bowie National Bank (Bank), which was guaranteed by Brashear. As partial security for the loan, the Millers granted the bank a security interest in "... all inventory ... whether now owned or hereafter acquired ...".

The record reflects that Cross was a wholesale supplier of cowboy boots. When the Millers' store began to experience financial trouble, Cross and William Miller, d/b/a Rock'N M, Inc., entered into a written, but unrecorded, consignment agreement. Under the terms of the agreement, ownership of the boots remained in Cross until they were sold by Miller, at which time Cross was to be paid from the proceeds of the sale.

Shortly after the parties entered into this consignment agreement, the store and the Millers filed for bankruptcy and the Bank made demand upon Brashear for payment of the loan. Brashear paid the loan and the bank assigned all of its rights in the collateral to her.

After the inventory was abandoned by the bankruptcy court, Brashear sold the remaining inventory, including the boots, for $43,500.

In appellant's sole point of error, she complains that the trial court erred in refusing to grant Brashear's motion for a directed verdict and judgment non obstante verdicto and in submitting special issues to the jury concerning consignment and damages, because as a matter of law the issues will not support a judgment. We note that appellant does not challenge the sufficiency of the evidence to support the special issues.

Here, the parties stipulated that Miller and Cross entered into a consignment arrangement. Generally, the agreement of the consignor and seller is not effective against a secured creditor. *See Fuller v. Texas Western Financial Corporation*, 644 S.W.2d 442, 443 (Tex.1982). However a supplier of goods on consignment may protect his goods from the claims of creditors if he:

(1) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or

(2) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or

(3) complies with the filing provisions of the chapter on Secured Transactions (Chapter 9), or

(4) is delivering a work of art subject to the Artists' Consignment Act.

TEX.BUS. & COM.CODE ANN. sec. 2.326(c) (Tex.UCC) (Vernon Supp.1986); *Marrs. v. South Texas National Bank*, 686 S.W.2d 675, 679 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.).

■ The burden of proof is on the consignor to establish that the transaction falls within one of the exceptions set forth in section 2.326. 3 R. ANDERSON, UNIFORM COMMERCIAL CODE sec. 2:326:45 (3d ed. 1983). However, if the consignor is unsuccessful in establishing that he comes within one of the exceptions in section 2.326, then the consignment sale is merely an agency coupled with a bailment and is not governed by the Uniform Commercial Code. *See* ANDERSON, sec. 2:326:7.

■ In response to the special issues submitted at trial, the jury found that it was generally known to the creditors of William Miller that he was substantially engaged in selling the goods of others.

Brashear argues that article 2.326(c)(2) applies only to general creditors, and not to secured creditors. Brashear relies on *In re Bildisco, Gerber Indus., Inc. v. Bildisco*, 7 B.R. 225 (D.N.J.1980), *aff'd.*, 11 B.R. 1019 (D.N.J.1981), as authority for her position that she, as the secured party, should prevail under the facts presented here. Brashear contends that since Article 2 of the Code is silent on the issue of priorities, U.C.C. Article 9 (and specifically Articles 9.114 and 9.312(c)) is determinitive of the rights between conflicting claimants. *See* TEX.BUS. & COM.CODE ANN. sec. 9.101, et seq. (Tex.UCC) (Vernon 1968).

In affirming the bankruptcy court's judgment, the district court in *In re Bildisco* held that when a consignment agreement is treated like a security interest and the consignor does not inform creditors of the seller that they are supplying goods on a consigned basis, the consignor will be treated as a secured creditor to parties claiming under an after-acquired property clause. *Id.* at 1020. The court in *Bildisco* then applied Article 9.312 in order to determine the rights between the two secured parties, who had filed financing statements. *Id.* at 1020–23.

The facts in *Bildisco*, are distinguishable from those in the instant case. In *Bildisco*, both the consignor and the secured party filed financing statements reflecting their interest. *Id.* at 1019–20. In addition, the consignee was not generally known to its creditors to be a seller of goods on consignment. *Id.* Here, consignor Cross did not file a financing statement and the jury found that consignee Miller was generally known to his creditors to be a seller of goods of others.

■ Further, in determining the respective rights between secured creditors, the issue is one of priority of liens. *See generally*, TEX.BUS. & COM.CODE ANN. sec. 9.101, et seq. (Tex.UCC) (Vernon 1968). Here, on the other hand, Cross did not claim a lien of priority in the boots; it claimed complete ownership of them.

Next, Brashear relies on *Fuller*, 644 S.W.2d 443, for the proposition that Article 2.326(c) does not apply to transactions between original contracting parties or their assignees.

Brashear's reliance on *Fuller* is misplaced. In the opinion by the Court of Appeals, *Fuller v. Texas Western Financial Corporation*, 635 S.W.2d 787 (Tex. App.—Tyler 1982 writ ref'd n.r.e.) the facts reflect that Amcrest was Fuller's supplier and that Amcrest assigned its interest in Fuller's account to Texas Western. *Id.* at 788. In attempting to prove a consignment, Fuller offered into evidence details of a consignment agreement between Amcrest and himself. *Id.* at 790–91. The Supreme Court, in their opinion, held that the language of section 2.326(c) indicates that the intent of the parties is to be disregarded only when the rights of third party creditors intervene. *Id.* 644 S.W.2d at 443.

Unlike the case in *Fuller*, the consignment agreement here was between Cross

and Miller, and therefore was not governed by the Code until the Bank intervened. *See* TEX.BUS. & COM.CODE ANN. sec. 2.326 comment 2 (Tex.UCC) (Vernon 1968).

A review of the evidence set forth above reveals that the trial court correctly overruled Brashear's motion for directed verdict and judgment non obstante veredicto.

Brashear on appeal does not challenge the validity of her assignment from the bank or the conclusion that Bank was a secured party. By virtue of her assignment from the bank, she was a secured creditor subject to the terms of article 2.326(c). *See Fuller*, 635 S.W.2d at 791.

Judgment affirmed.