DAYTON, RESPONDENT, *v.* EWART, APPELLANT.

(No. 1,535.)

(Submitted April 11, 1903.　Decided May 4, 1903.)

*Exemptions—Earnings of Judgment Debtor—Gold Dust from Miner's Placer Claim.*

Section 1222 (Subdivision 7), Code of Civil Procedure, exempts to a placer miner the gold dust taken from his claim by his own labor within thirty days next preceding a levy of execution or attachment, when he is a poor man whose family resides in the state and depends for support upon his personal labor in working his mine, and the debt is not for the common necessaries of life.

*Appeal from District Court, Ravalli County; F. Woody, Judge.*

ACTION by L. H. Dayton against E. Ewart, as constable. Judgment for plaintiff, and defendant appeals.　Affirmed.

*Mr. C. B. Calkins,* for Appellant.

The legislature intended Section 1222 (Subdivision 7) for the protection of those whose labor is all the capital they possess; those employed by others by the day, week, month or year, and those whose sole profit is what they get for their services. A man owning and operating a placer mine has other capital besides the labor he individually performs in working his claim; in such case, his mine, water ditch, tools and appliances constitute his capital whereby he derives his profit in the occupation which he follows.　If a placer miner can claim exempt the gold dust which he washes from his mine for a period of thirty days, then one engaged in any occupation could invoke the protection of this statute, the farmer, merchant, professional man, banker and contractor.　(*Shelly* v. *Smith,* 59 Iowa, 453; *Heebner* v. *Chave,* 5 Pa. St. 115; *Smith* v. *Brooke,* 49 Pa. St. 147.)

*Mr. S. G. Murray,* and *Mr. L. J. Knapp,* for Respondent.

MR. COMMISSIONER CALLAWAY prepared the opinion for the court.

Respondent commenced this action in the district court of Ravalli county, Montana, to recover of appellant the value of certain gold dust. Appellant joined issue by answer. The parties then submitted the case to the court upon an agreed statement of facts. From this statement it appears that respondent is, and has been for several years last past, a resident of this state, and the head of a family residing in this state; that he is a miner, having the possessory title to a placer claim, which he has been working with his own water ditch, flume, pipe, tools, and other appliances; that he is a poor man, and that he and his family depend for support upon what he can get from working this placer mine; that on June 30, 1899, in an action in which the firm of May Bros. were plaintiffs and respondent was defendant, the appellant, who was then a constable of Stevens township, in said county, by virtue of a writ of attachment issued in said action, levied upon and took into his custody gold dust of the value of $63.20, the property of respondent, and which had been mined by him within thirty days next preceding the levy of the attachment. On July 5, 1899, judgment by default was entered for the plaintiffs, execution was issued thereon, and the gold dust sold thereunder. Said judgment was obtained upon a promissory note executed by appellant to May Bros. for cash loaned to him.

Prior to the time of obtaining said judgment, and after the gold dust had been levied upon, respondent filed with appellant his affidavit, claiming the gold dust as exempt from attachment or execution, as earnings for his personal services rendered within thirty days next preceding the levy of the attachment. Upon appellant's refusal to release the same, respondent on July 24, 1899, commenced this suit. Upon the statement of facts submitted, the court entered judgment for respondent, and from such judgment this appeal is prosecuted.

The question for decision by this court is whether, under the facts presented, the respondent can successfully claim the gold dust mentioned as exempt from attachment and execution.

We must look to Section 1222, Code of Civil Procedure, for its solution. Subdivision 7 of this section provides that there shall be exempt from execution "the earnings of the judgment debtor for his personal services rendered at any time within thirty days next preceding the levy of execution or attachment, when it appears by the debtor's affidavit, or otherwise, that such earnings are necessary for the use of his family residing in this state, supported in whole or in part by his labor; but where debts are incurred by any such person, or his wife or family, for the common necessaries of life; the one-half of such earnings above mentioned, are, nevertheless, subject to execution, garnishment or attachment to satisfy debts so incurred."

At first glance it might seem that the word "earnings of the judgment debtor for his personal services rendered" contemplate the reward paid to one for services rendered another. A technical construction of the statute would compel the adoption of such a meaning. Such construction would be at variance with the spirit of the constitution and laws of the state. Section 4, Article XIX, of the Constitution, provides that "the legislative assembly shall enact liberal homestead and exemption laws," and this court has held that statutes enacted in pursuance of this mandate should be liberally construed. (*Ferguson* v. *Speith,* 13 Mont. 487, 34 Pac. 1020, 40 Am. St. Rep. 459.)

The courts of the different states have encountered considerable difficulty in construing exemption statutes, but all agree that such statutes are remedial, and must be construed with liberality. One difficulty seems to have been in arriving at the true meaning of the words "earnings," "wages," "salary," and the like. The word "earn" means "to gain as a just return or recompense by service, labor, or exertion." "Earnings" is "that which is earned." (See the Standard, Century, and Webster's Dictionaries.)

In passing upon an exemption statute, the supreme court of

Massachusetts said: "We are of opinion that the word
'earnings' was used for the purpose of embracing a larger class
of credits than would be included in the more common term
'wages.' " (*Jenks* v. *Dyer*, 102 Mass. 235.) This interpreta-
tion has been generally adopted. (See Bouvier's, Anderson's,
and Black's Law Dictionaries.)

Mr. Freeman, in his work on Executions, Section 234, says:
"Between the terms 'wages' and 'salary' there is no material
difference when they are applied to the subject here under con-
sideration. The former term is commonly used to denote the
compensation of laborers, and the latter that of other persons
of more permanent employment and more elevated stations.
The term 'earnings' is more comprehensive than either of the
others. It implies, as do they, that the sum due shall be claimed
for the personal services of the claimant, and that it shall not
include, to any substantial extent, recompense for materials fur-
nished; but earnings need not result from work done under the
direction of another, nor from manual labor."

Nor do the words "personal services rendered" necessarily
contemplate that the services be rendered another. They may,
in proper cases, mean the services which one renders to himself.
The word "service" has different meanings. It may mean "an
advantage conferred; that which promotes interest or happiness;
benefit." (See Webster's and Standard Dictionaries.) One
confers an advantage upon himself by striving for his own
benefit, and looks upon his labor done in his own behalf as that
which particularly furthers his interest and happiness. The
word "render" sometimes means to "bestow or provide; fur-
nish; to give in answer to requirement of duty or demand."
(Standard Dictionary.) One provides for himself and family,
and does so in answer to one of the highest requirements of
duty.

In reading Section 1222, it appears that a miner has exempt
from execution "his cabin or dwelling, sluices and pipes, hose,
windlass, derricks, cars, pumps, tools, implements and appli-
ances necessary for carrying on any kind of mining operations,

not exceeding in value the aggregate sum of one thousand dollars," and so forth. Now, it may be inquired, can it be that the statute exempts all these, and yet does not exempt the reward won by their use, when necessary for the support of the miner's family residing in this state? or exempts to him his tools, and in the same breath deprives him of the fruits of his toil therewith, allowing his family to go in want? Such a construction is clearly unreasonable, and demonstrates to us that, had the legislature intended to restrict the exemption granted, the word "wages" would have been employed, instead of the broader word "earnings."

Again, can it be that the legislative assembly desired to restrict the exemption to those only who are the servants of others? We think not. It has been the policy of our government since its beginning to foster that independence which follows a reliance upon one's own resources. The courts of New York, in construing a similar exemption statute, have arrived at the same conclusion to which we have come. (See *McSkimin* v. *Knowlton* (Com. Pl.), 14 N. Y. Supp. 283, and cases cited.)

Testing the statute under consideration by the rules of construction provided by Section 4660 of the Civil Code, we believe we correctly declare the legislative intention.

It must be remembered that in the case at bar it is conceded that the respondent is a poor man, whose family depends for support upon his personal services in working his placer mine; that the sum attached is necessary for the use of his family residing in this state; that the gold dust was mined by respondent within thirty days next preceding the levy of attachment; and that the suit brought against him was not upon a debt incurred by him for the common necessaries of life. The court below, therefore, was correct in entering judgment for respondent.

But, while a liberal construction of the exemption laws should always be encouraged, it will be readily perceived that a too liberal construction thereof might lead to many abuses not contemplated by the lawmaking power, and we deem it proper to say that this case is determined and decided with reference to

the facts presented only. "Each case of this character must rest upon its own facts existing at the time in question." (*Cushing* v. *Quigley,* 11 Mont. 577, 29 Pac. 337.)

In our opinion, the judgment should be affirmed.


PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment is affirmed.


MR. JUSTICE MILBURN: I dissent. The part of Section 1222 (Subsection 7) of the Code of Civil Procedure, under which the exemption is claimed, declares as exempt from levy "the earnings of the judgment debtor for his personal services rendered at any time within thirty days next preceding the levy of the execution or attachment, when it appears * * * that such earnings are necessary for the use of his family * * * supported in whole or in part by his labor. * * *" I cannot understand that this section expresses or implies an intention on the part of the legislature to protect income from a private and independent business from levy, if such income be not for services rendered others. The words "earnings * * * for his personal *services rendered*" do not suggest to me any such idea. (Bouvier, Law Dict.; 22 Am. & Eng. Ency. Law (Ed. 1893), 106.) If the legislature had intended to add to the exemptions of a placer miner the gold which he might get into his sluice boxes, it would have been very easy for it to say so. But it did not. The legislature gives to the persons mentioned in the first six subdivisions of Section 1222 certain exemptions, and then expressly declares that in addition to those exemptions the debtor may have also the exemption provided in Subsection 7—that is to say, that any one of the persons whose particular property is made exempt under any one of the six subdivisions referred to may also render personal services to others and have the earnings therefor exempt. The case of *McSkimin* v. *Knowlton* (Com. Pl.), 14 N. Y. Supp. 283, relied upon in the commissioner's opinion, *supra,* is not, in my opinion, a well-considered case. I cannot find anything in it which

supports the proposition that placer gold, taken out of the ground by a miner by and for himself, is his earnings for personal services rendered. The learned justice in that case states that his first impression was the same which I entertain, but he states that upon examination he found that "the courts have construed the term 'personal service' to include earnings derived from a business, where the services are the chief factor in it." He seems to have had some difficulty in defining the words "personal service." So far as I can understand from what the justice says of them, the cases cited by him appear to have been cases in which services were rendered by the debtor to others, and, therefore, are not in point as sustaining the conclusion at which he finally arrived.

