141 N.J. Super. 79 (1976)
357 A.2d 292
INTERNATIONAL BUSINESS MACHINES CORPORATION, A NEW YORK CORPORATION, PETITIONER-RESPONDENT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF THE TREASURY, DIVISION OF TAXATION, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 6, 1976.
Decided April 23, 1976.
*80 Before Judges LYNCH, LARNER and HORN.
Mr. William F. Hyland, Attorney General, attorney for respondent-appellant (Mr. Richard M. Conley, Deputy Attorney General, of counsel; Mr. Harry Haushalter, Deputy Attorney General, on the brief).
*81 Messrs. Wharton, Stewart & Davis, attorneys for petitioner-respondent (Mr. Robert B. Haines on the brief).
The opinion of the court was delivered by LARNER, J.A.D.
This case is one of first impression involving the construction and application of the Retail Gross Receipts Tax Act of 1966. N.J.S.A. 54:11C-1 et seq.
Plaintiff International Business Machines Corporation (IBM) filed a tax return for the year 1967 pursuant to said act and paid to the State of New Jersey a tax of $20,219.80. Thereafter it filed a claim for refund, contending that its business operations in New Jersey were not encompassed by the gross receipts tax. Upon denial of the refund by the Director of the Division of Taxation, IBM appealed to the Division of Tax Appeals.
After a plenary hearing the judge of the Division rendered an opinion determining that IBM was not subject to the tax. This opinion was approved by the Division of Tax Appeals and an appropriate judgment entered directing the Division of Taxation of the State Department of the Treasury to refund the tax. The State appeals from that judgment.
The retail gross receipts tax is an excise tax imposed upon the owner of a "retail store" computed at the rate of 1/20 of 1% of annual gross receipts from "retail store sales" in excess of $150,000.[1] The focus of this litigation is whether the modus operandi of the IBM business activities in the State of New Jersey is such as to fall within the statutory definition of a retail store. N.J.S.A. 54:11C-2. It is therefore essential to examine the factual background of IBM's sales methods as developed by the relatively undisputed evidence in the record below.
*82 IBM manufactures all the products and equipment which it sells. It merchandises the sale and distribution of its products through three divisions. The Data Processing Division manufactures and markets various types of information handling systems, related equipment and services; the Information Records Division manufactures and markets processing cards, business forms, magnetic tapes and other products used in information and data processing systems; and the Office Products Division manufactures and markets typewriters, dictation equipment, copying equipment and related supplies.
The company maintains 12 branch offices in the State of New Jersey, all of which generally function in the same manner. Each office is used as a center of administration and as a home base for a group of sales personnel assigned to the territory encompassed by that branch office. The sales representatives have desks therein where they perform the necessary paper work to carry out their functions. The company employs a large number of trained sales and engineering personnel who develop sales primarily by contacting and servicing customers and potential customers at their respective business locations. These contacts are supplemented by telephone calls or mail emanating from the branch offices.
In addition to serving as a base for outside salesmen, the branch office also serves other uses in the marketing function. New sophisticated systems are on display for demonstration to interested prospects and their employees, who are invited by the sales personnel to inspect the same and determine whether they are appropriate for their needs. From time to time these branch offices are also used for meetings and seminars to educate prospective customers on new concepts and equipment in information processing.
In order to maintain good will, as an accommodation for customers, the branch offices keep on hand a supply of small sales products such as business forms, typewriter ribbons, magnetic tapes, typewriter elements and similar items *83 which are sold and picked up at the branch offices by salesmen or customers. These sales constitute only 3/10 of 1% of the total sales in the State. Other than these minor supplies there is no inventory of equipment or products maintained at the branch offices. Nor is there a regular pattern of sales over the counter to persons who come off the street. In fact, there is no cash register or sales counter in any of the offices, nor a clerk assigned to handle such sales.
The sales made by the salesmen are usually consummated at the purchaser's place of business, although some transactions are closed at the branch offices. Billing is done exclusively from division headquarters. The equipment or supplies are then shipped from one of the manufacturing facilities of the company located at various points in the United States.
The State urges that the branch offices of the company constitute retail stores within the compass of the Gross Receipts Tax Act and that as a consequence the total gross receipts of the company from New Jersey sales amounting to approximately 40 million dollars are taxable thereunder.
The statute in question was adopted in 1966 to replace the much criticized tax on personal property used in business, which was imposed and collected by local taxing districts. See N.J.S.A. 54:4-9, repealed by N.J.S.A. 54:4-2.52. As such, the Retail Gross Receipts Tax Act is limited to gross receipts from sales made in retail stores and does not apply to all retail sales made by business establishments in the State of New Jersey. This is not only manifest from the provisions of the act (N.J.S.A. 54:11C-2(b), (c), (d); 54:11C-3; 54:11C-4) but is made clear by its title which reads:
An act imposing a gross receipts tax on retail store sales, providing for the registering of persons engaged in retail store sales, prescribing the methods of collecting the tax imposed, providing penalties for violations, and making an appropriation therefor. [Emphasis supplied]
*84 As a consequence, unless the branch offices of IBM may be considered as retail stores, the gross receipts of the company are beyond the reach of taxation under this particular statute.
N.J.S.A. 54:11C-2(d) defines a retail store as:
... [A]ny business, except a manufacturing business, carried on at a fixed location or locations in New Jersey, one purpose and activity of which is purchasing tangible personal property and selling such property to ultimate consumers and users. The term "retail store" shall include factory retail outlets where such retail outlets are located in New Jersey and are used primarily for the purpose of making sales of tangible personal property, on the premises of the business, to ultimate consumers and users and not for resale.
In construing the meaning and intent of this tax legislation the words therein must be given their ordinary and primary meaning. Old Colony R. Co. v. Commissioner, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484 (1932); James S. Baker (Imports) Co. v. United States, 292 F. Supp. 1014 (Cust. Ct. 1968); Julius Roehrs Co. v. Div. of Tax Appeals, 16 N.J. 493, 497 (1954). See also, 3 Sutherland, Statutory Construction (4 ed. 1974), § 66.03 at 188. And in dealing particularly with a tax statute the established rule is that the language should not be extended beyond its clear import to embrace matters or persons not specifically incorporated therein. Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211 (1917); Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 529 (1964). See also, 3 Sutherland, op. cit., § 66.01 at 179. Statutes granting the authority to tax "are construed most strongly against the government and in favor of the citizen." Gould v. Gould, supra, 245 U.S. at 153, 38 S.Ct. at 53, 62 L.Ed. at 213.
The first sentence in the statutory definition of a "retail store" contained in par. (d) of § 2 is descriptive of the normal retail enterprise whose operation involves "purchasing tangible personal property and selling such property to ultimate consumers and users." Such a business establishment *85 is simply a distribution conduit in the marketing of products between the manufacturer or wholesaler and the consuming public. Since IBM is both the manufacturer and seller of its own products it does not fall within the compass of the definition, i.e., a business which purchases and sells the same products.
The State contends, however, that the remainder of the section relating to "factory retail outlets" mandates that IBM receipts through its branch office operations are subject to the tax. We disagree.
The latter portion of the definition of a retail store in par. (d) was intended to make certain that the many manufacturers who sell their products directly to the retail trade through factory outlets are not excluded from the tax imposed upon their retail competitors. The statutory language, carefully drafted, demonstrates, however, that the factory outlets referred to therein have no application to the offices maintained by IBM.
The factory retail outlet encompassed by the definition is one which is "used primarily for the purpose of making sales of tangible personal property on the premises of the business." It is evident from the factual exploration of the manner in which IBM conducts its business that its branch offices are not used primarily for the purpose of making sales on the premises. The offices have various uses in conjunction with the sales effort. But the actual sales of products at the premises are but 3/10 of 1% of the total sales of the company and consist of accommodation sales to existing customers of the company. This is hardly a factual base for taxing all the sales of the corporation in the State.
Since the thrust of this tax act consists of the receipts from sales made by and in retail stores and not sales made by all retail business, the legislation conjures up a well-known picture of a retail sales outlet where an inventory of merchandise is maintained and displayed, where sales persons are present, where signs and other advertising displays seek to attract the buying public, where people come in and *86 out all day long, where sales are recorded and payments made through cash or credit  and where a myriad of other activities take place which are characteristic of a retail store.
Such is not the picture brought to mind by the branch offices of IBM which are utilized primarily as a setting for administrative functions, desk spaces for outside sales personnel, and display and demonstration of large business equipment. None of the common indicia of a retail sales outlet is present. The very nature of the business demands that the seller bring his sales pitch to the prospective customer. The mere use of the office as an aid and adjunct to the sales effort does not transform that office into a retail store as contemplated by the Legislature in the statute in question.
Obviously, the Legislature could impose a gross receipts tax on all retail sales in New Jersey and such legislation would include IBM within its impact. However, the legislation which it adopted and which must be construed by its terms is much more limited in scope and, as such, fails to cover the business operation described by the proofs in this case.
We are not called upon in the context of this case to determine whether other fact patterns involving differing business practices would bring into play the application of this Retail Gross Receipts Tax Act. That remains for another day and another record.
The cases from other jurisdictions to which the State refers in support of its argument are all distinguishable either on the facts or the wording of the applicable statutes. In Lesser v. Sertner's, Inc., 166 F.2d 471 (2 Cir.), cert. denied 313 U.S. 813, 69 S.Ct. 29, 93 L.Ed. 368 (1948), the court construed a provision of the Federal Fair Labor Standards Act dealing with its exemption from applicability to employees "engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce." 166 F.2d at 473. Brennan v. Greene's Propane *87 Gas Service, 479 F.2d 1027 (5 Cir. 1973), is similarly inapposite.
The Supreme Court of Texas in Montgomery Ward & Co., Inc. v. State, 141 Tex. 626, 175 S.W.2d 218 (1943), held that mail order offices of Montgomery Ward were within the meaning of the Texas Chain Store Tax Statute which provided for a tax on receipts from sales in "any store or mercantile establishment. * * *" 141 Tex. at 629, 175 S.W.2d at 219, where sales were consummated at the order offices.
In Lee v. Jacksonville Gas Co., 138 Fla. 890, 190 So. 800 (Sup. Ct. 1939), the taxpayer displayed samples and models of gas appliances for the purpose of sale on the first floor of its premises. Customers were shown these appliances and sales solicited on the premises by employees of the company. Shipment was made from the manufacturing plant at another location. The court concluded that the gross receipts from such sales were taxable under a statute which defined "store" as "any store or stores of any mercantile establishment * * * in which goods, wares or merchandise of any kind are sold or offered to be sold at retail." 138 Fla. at 893, 190 So. at 801.
In our opinion these cited cases are not controlling or persuasive.
We conclude that the determination by the Division of Tax Appeals that the business activities of IBM in this State do not subject it to the retail gross receipts tax is correct, and its judgment is therefore affirmed.
NOTES
[1] This is in addition to and distinguishable from the sales tax paid by the consumer and collected by the retailer. N.J.S.A. 54:32B-1 et seq.