HOPKINS, J. T. C.
This is an appeal from a determination of the Director of the Division of Taxation that plaintiffs are liable for additional taxes, as provided by the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1 — 1 et seq., for the tax year 1976, in the amount of $4,040.35, together with penalty of $200.72 and interest of $602.15.
Plaintiff taxpayers contend that defendant Director erred in taxing income realized on Edward L. McMenamy’s exercise on December 15, 1976 of a “nonqualified” stock option which had been received from his employer to provide incentive and a reward for his employment.
*358 Taxpayers filed a motion for summary judgment, and Director filed a cross-motion for summary judgment. As there is no genuine issue of material fact, such motions are appropriate. E.4:46-2.
On April 18, 1969 taxpayer was granted a ten-year option, pursuant to a nonqualified stock option plan maintained by his employer, to purchase 900 Class A shares of his corporate employer. Subsequently, on November 10, 1972 the option was changed to substitute 1,350 shares of Class B stock for the Class A stock. Under the terms of the plan he could exercise only one-third of the option after three years and then could only exercise an additional one-third annually thereafter.
The option price at which the options were issued to the taxpayer was cqmputed by a formula set out in the plan. This formula, as applicable to 1976, was an attempt to ascertain the market value of the underlying stock since it was not traded on the open market. Basically, the “Fair Market Value” of the stock was computed by first calculating a “Capitalized Earnings Value.” This was done by obtaining weighted average annual net earnings, less the amount applicable to preferred stock and outstanding options, by using the three latest annual earnings and weighting them on a 3-2 — 1 basis in descending order from the most recent year. The resulting factor was then multiplied by a “Price/Earnings Ratio of Index Food Companies.” This latter ratio was arrived at by taking the quarterly ratios of specified companies for the prior three years and weighting those results on a 3 — 2—1 descending order as to each four consecutive calendar quarters. The resulting value could then be adjusted upward by the corporation’s investment banking adviser.
Once having determined the “Capitalized Earnings Value,” it was then divided by a number representing all outstanding Class A and B stock, plus all outstanding options for that stock and ten times the number of outstanding common stock. The resulting value could then be adjusted upward or downward to account for any changes between December 31 and February 14, *359 the latter date being the “Valuation Date.” This value could not be less than adjusted book value for the stock.
The value so determined was the option price for all options issued during the year subsequent to the “Valuation Date.” The plan provided that if an option holder was discharged for cause, the option would terminate. On death, the estate would have one year in which to exercise the option and, on retirement, the options could be exercised within the three months next preceding the retirement date or within three months thereafter, but no later than the termination date of the option.
Taxpayer’s stock option price was $494 a share. Since the stock was not traded, he considered the option plan’s “Fair Market Value” for 1976, which was $716.64 a share, as the fair market value of the shares which he received. He reported the difference as ordinary income on his federal income tax return for 1976. The Director has not taken issue with the method by which the acquired shares were valued.
Taxpayer’s specific allegation is that the provisions of N.J. S.A. 54A:9 — 27 only taxed income which was earned after July 1, 1976, and that the income realized by the exercise of the stock option was earned prior to July 1, 1976.
In support of his position, taxpayer has shown that the original Assembly bill pertaining to the Gross Income Tax Act read as follows:
54A:9A-20. Effective date. This Act shall take effect immediately and shall be applicable with respect to income occurring in taxable years ending on or after January 1, 1976, but only to the extent such income has been earned or received on or after January 1, 1976. [Emphasis added]
The Assembly Committee deleted the word “received,” and the provision was amended to read:
54A:9-27. Effective Date, (a) This Act shall take effect immediately and shall be applicable with respect to items of income, deduction, loss or gain occurring in taxable years ending on or after April 1, 1976, but only to the extent such items have been earned, or incurred on or after April 1, 1976. [Emphasis added]
The change from “received” to “incurred” was continued in the Senate and is in the final legislation.
While taxpayer recognizes that the insertion of “incurred” was necessary because the legislation was changed to permit *360 deductions and offsetting losses, he contends that the elimination of the word “received” clearly intended and resulted in a dichotomy of income, i. e., that which was earned, but not received prior to July 1, 1976, and that which was both earned and received thereafter.
In construing revenue legislation it is the common and ordinary meaning of words which is to be given effect. International Business Machines Corp. v. State, 141 N.J.Super. 79, 84, 357 A.2d 292 (App.Div.1976); 3A Sutherland, Statutory Construction, § 66.01 at 179 (1973). “Earn” is defined in Random House Dictionary of the English Language, 448 (1966), as “1. To gain or get in return for one’s labor or service,” or “2. To merit as compensation, as for service,” or “3. To acquire through merit.” Further, in Webster’s New Collegiate Dictionary, 354 (1973), it is defined as “1 a: to receive as return for effort....”
The Random House Dictionary definition upon which taxpayer relies does not use the word “receive" in its definition of “earn.” However, “earn” is defined as “to . . . get in return for one’s labor.” The word “get” is therein defined as “1. To receive or come to have possession, use or enjoyment of.” (At 594). “Earn” has further been defined to mean to “acquire by labor or services,” 14 Words & Phrases at 18, citing Hartford Electric Light Co. v. McLaughlin, 131 Conn. 1, 37 A.2d 361, 362 (Sup.Ct.Err.1944), or “to gain as just return for labor,” id. citing Dayton v. Ewart, 28 Mont. 153, 72 P. 420, 421 (Sup.Ct.1903), or to “gain, get, obtain or acquire as the reward for labor,” id. citing In re Lewis’ Estate, 156 Pa. 178, 27 A. 35, 36 (Sup.Ct.1893). More specifically, Shangri-La, Inc., v. State, 113 N.H. 440, 309 A.2d 285 (Sup.Ct.1973), held, in the context of a state income tax act, that “earned” means realized or received with respect to the sale of appreciated property. See, also, Adams v. Burts, 245 S.C. 339, 140 S.E.2d 586 (S.C.Sup.Ct.1965).
On the other hand, “earned” is also defined as meaning “to merit or deserve, whether the award is received or not.” 14 Words & Phrases at 18, citing Johnson Cty. v. Crosier, 211 S. W. *361 2d 299, 300 (Tex.Civ.App.1948), and In re Kinney Aluminum Co., 78 F.Supp. 565, 569 (S.D.Calif.1948). Wages are earned the moment labor is done, not at some future date when payment becomes due. Seidenberg v. Duboff & Davies, 143 Misc. 167, 256 N.Y.S. 17, 19 (City Ct.1932). In re Mergentime, Inc., 217 F.Supp. 887, 888 (S.D.N.Y.1963), held that even though the right to vacation pay was fixed and certain at the end of 125 days during which days services were performed, the income was “earned” pro rata over the 125 days.
Definitions of “earned” vary enough so that resort must be had to the legislative objective and rules of statutory construction. The internal sense of a statute controls over its individual words. Particular words of a statute are to be made responsive to the essential principles of the statute. Wollen v. Fort Lee, 27 N.J. 408, 418, 142 A.2d 881 (1958).
Thus, resort should be made to the other statutory provisions indicating when the Legislature intended income to be taxed. Also those cases dealing with the word “earned” in the context of revenue laws are deemed to be of greatest authority.
The general rule provided by the Gross Income Tax Act with respect to the occurrence of income is provided by N.J.S.A. 54A:8-3(c) as follows:
A taxpayer’s accounting method under this act shall be the same as his accounting method for federal income tax purposes....
Taxpayer here is admittedly a cash-basis taxpayer and must report income for the taxable period in which income is actually or constructively received. Treas.Reg. 1.451-l(a) (1957); 1.446-1(c)(1) (1957).
33 Am.Jur.2d Federal Taxation, § 2560, states as follows: Under the cash basis it does not matter when the income was earned or when the expense was incurred. Rather income is reported when the income is actually or constructively received.... [at 584]
Constructive receipt occurs when cash or property is set apart for the taxpayer so that he can withdraw such merely on the giving of notice and which is not subject to substantial limitations or restrictions. Treas.Reg. 1.451-2(a) (1957).
In the case of nonqualified stock options, it is well established that, for federal tax purposes, a cash basis taxpayer must *362 recognize income either on the receipt of the option if it then has a readily ascertainable fair market value, or, if not, then when the option is exercised, i. e., when the taxpayer gains the benefit of the bargain purchase. Commissioner v. LoBue, 351 U.S. 243, 76 S.Ct. 800, 100 L.Ed. 1142 (1956); Commissioner v. Smith, 324 U.S. 177, 65 S.Ct. 591, 89 L.Ed. 830 (1944); Mills v. Commissioner, 399 F.2d 744 (4 Cir. 1965). Where, in the interim between the grant of the option and its exercise, the underlying stock increases in value so that a potential benefit is readily available to the taxpayer, the court, in Commissioner v. Smith, supra, stated that
... [A]s the option was not found to have any market value when given, it could not itself operate to compensate respondent. It could do so only as it might be the means of securing the transfer of the shares of stock from the employer to the employee at a price less than their market value, or possibly, which we do not decide, as the option might be sold when that disparity in value existed. Hence the compensation for respondent's services, which the parties contemplated, plainly was not confined to present value, but included the compensation obtainable by the exercise of the option given for that purpose, [at 181]
Taxpayer’s argument that the value of the option was ascertainable on February 15,1976 assumes that the fair market value of options issued during the annual period subsequent to the February 1976 valuation date indelibly reflected the “earned” income attributable to his option. As previously noted, while the parties accepted the taxpayer’s method of valuing the underlying shares by that reference point, the passage of a ten-month period could well have affected the true value of the subject stock. The underlying shares could well have either appreciated or depreciated in value as of December 15, 1976. Further, only by exercise did the taxpayer give up the right to participate in future appreciation or depreciation as well as remove the potential for cancellation of the option if he was discharged for cause.
Since N.J.S.A. 54A:8-3(c) requires a New Jersey taxpayer to follow the same accounting method provided for federal tax purposes, and where the taxpayer herein was a cash-basis taxpayer, the word “earned,” as used in N.J.S.A. 54A:9-27, must be construed to include income which was not actually or constructively received prior to July 1, 1976. There was no actual *363 receipt prior to July 1, 1976, and the contingencies and limitations previously discussed precluded the income from being constructively received.
The above conclusion is consistent with cases in other states which have held that income is “earned” only when it is ascertainable. Adams v. Burts, 245 S.C. 339, 140 S.E.2d 586 (Sup.Ct.1965); Hunt v. South Carolina Tax Comm’n, 249 S.C. 147, 153 S.E.2d 321 (Sup.Ct.1957), and Shangri-La, Inc., v. State, supra.
It should also be noted that since a nonqualified stock option can vary in value during its term, it is analagous to capital assets where appreciation in value becomes subject to taxation at the time the asset is liquidated. Eisner v. Macomber, 252 U.S. 189, 207, 40 S.Ct. 189, 193 64 L.Ed. 521 (1920); McLaughlin v. Alliance Ins. Co., 286 U.S. 244, 250, 52 S.Ct. 538, 539, 76 L.Ed. 1083 (1932); Klebanow v. Glaser, 80 N.J. 367, 371, 403 A.2d 897 (1980), and Farber v. Taxation Div. Director, 2 N.J.Tax 252, 257 (Tax Ct.1981). Although here the attack was directed on the definition of the word “earned,” the court’s finding that there was no taxable event which could reasonably specify what was earned prior to the exercise of the option makes the aforesaid line of authority applicable.
Defendant will submit a form of judgment pursuant to R. 4:42 — 1(b).