HOPKINS, J.T.C.,
dissenting.
I cannot agree with the majority since its opinion gives inappropriate weight to a quotation from Gould v. Gould, 245 U.S. 151, 153, 38 S.Ct. 53, 53, 62 L.Ed. 211 (1917), which is used in the opinion of Fedders Financial Corp. v. Taxation Div. Dir., 96 N.J. 376, 476 A.2d 741 (1984). In doing so, it unduly restricts interpretation of the statutory definition of “indebtedness owing directly or indirectly” to the record stockholder of a taxpayer corporation when the facts clearly show that such record stockholder is merely a proxy of the actual stockholder.
The issue is whether the phrase “indebtedness owing directly or indirectly,” as defined in N.J.S.A. 54:10A-4(e) of the Corporation Business Tax Act (CBT), is restricted to indebtedness owed to an immediate record parent when the taxpayer is a third-tier subsidiary of the lender. In so concluding, the majority fails to recognize the clear purport of the statute. Furthermore, even if such statute is unclear, the legislative history is not wanting. See Fedders, 96 N.J. 376, 386, 476 A.2d 741. That legislative history fully supports approximately 30 years of the Director’s considered regulations which hold that an indirect stockholder, such as here involved, is included in the definition of “stockholder.”
In concluding that the majority’s approach is too restrictive, the part of the CBT which defines “indebtedness owing directly *499 or indirectly” should be reviewed. N.J.S.A. 54:10A-4(e) reads as follows:
“Indebtedness owing directly or indirectly”shall include, without limitation thereto, all indebtedness owing to any stockholder or shareholder and to members of his immediate family where a stockholder and members of his immediate family together or in the aggregate own 10% or more of the aggregate outstanding shares of the taxpayer's capital stock of all classes. [Emphasis supplied]
The term being defined is “indebtedness owing directly or indirectly____” The expansive portion of the definition, namely, “shall include, without limitation thereto, all indebtedness owing to any stockholder or shareholder,” emphasis supplied, expresses the desired extent of the legislation. In construing revenue legislation, it is the common and ordinary meaning of the words which is to be given effect. International Bus. Mach. Corp. v. State, 141 N.J.Super. 79, 84, 357 A.2d 292 (App.Div.1986). The definition of the word “holder,” in Webster’s New Collegiate Dictionary (1987), is:
1: A person that holds: a (1): owner (2): tenant b: a person in possession of and legally entitled to receive payment of a bill, note, or check [at 575]
Furthermore, the definition of stockholder, in the same publication, is “an owner of ... stock.” Id. at 1160. “Owner” requires a sense of possession of more than bare legal title.
If the definition of “holder,” under the above reasoning, is still considered unclear, then the quotation from Gould v. Gould, supra, which was contained in the Fedders opinion, must be read in the context of that case. The Sixteenth Amendment to the United States Constitution, authorizing income taxes without apportionment among the states, was ratified in February 1913. Congress passed a federal income tax law in October of that year. At issue in Gould was whether alimony was taxable income. Income had been defined as:
[G]ains, profits, and income derived from salaries wages, or compensation for personal service of whatever kind and in whatever form paid, or from professions, vocations, businesses, trade, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in real or personal property, also from interest, rent, dividends, securities, or the transaction of any lawful business carried on for gain or profit, or gains or profits and income derived from any source whatever, including the income *500 from but not the value of property acquired by gift, bequest, devise, or descent.... [245 U.S. at 152-153, 38 S.Ct. at 53; citation omitted]
This definition did not specifically include alimony.
In reaching its conclusion that alimony was not included in the definition of income, the Gould Court stated:
In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen. [Id. at 153, 38 S.Ct. at 53]
Utilizing this principle, the Gould Court found that alimony paid to a divorced wife, under a decree of court, did not fall within the statutory definition of income. It noted that alimony flowed from a natural and legal duty of support to a wife and that the taxable income of the divorced husband was not decreased by this payment.
In adopting the Gould principle, the Fedders opinion stated:
We continue to adhere to the view that our task is to ascertain the legislative intent. When the statutory language is unclear and the legislative history is wanting, the doubt referred to in Gould exists and its principle is applicable. [96 N.J. at 385-386, 476 A.2d 741]
This shows that in order for Gould to be applicable, the language must be unclear and the legislative history wanting.
The rules of statutory construction are dispositive as to whether the language of the statute is unclear. The internal sense of the statute controls. Particular words in a statute are to be made responsive to the essential elements of the statute. Wollen v. Fort Lee, 27 N.J. 408, 418, 142 A.2d 881 (1958); McMenamy v. Taxation Div. Director, 3 N.J.Tax 356 (Tax.Ct. 1981). In analyzing the part played by the use of the words “stockholder or shareholder,” reference should also be made to the case of Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 197 A.2d 673 (1964). That opinion, which was quoted by the majority as supportive of a strict construction principle, held that “family,” as used in the statute, should be given its primary dictionary definition, i.e., a “collective body of persons living together in one home, in a permanent and domestic character under one head or management.” Id. at 530, 197 A.2d 673. Using this as the appropriate definition of “immedi *501 ate family,” it should logically follow that the statute, as a whole, was intended to encompass corporate taxpayers, under one head or management, in the same manner as natural parents. Such construction flows from the essential elements of the statute.
Assuming that the statutory language, as construed above, still does not support the Director’s position, then the legislative history of the CBT and the provision treating certain debt capital in the same manner as investment capital, should be examined. In considering a similar issue, our Supreme Court, in the case of Intern. Flavors & Frag. v. Director, Div. of Tax., 102 N.J. 210, 507 A.2d 700 (1986), which was decided subsequent to the Fedders case, utilized legislative history. That case involved interpretation of § 4(k) of the CBT, which defines “ownership of investment.” N.J.S.A. 54:10A-4(k). That section provided for an exclusion in the computation of taxable income of a corporation. The Court, consistent with Fedders, utilized legislative history, stating:
The critical question is whether the New Jersey Legislature intended to exclude from a corporation’s net income base 100% of the dividends that it received from an indirectly-owned subsidiary. We look first at the statutory language. It is a well-established principle of statutory construction that a court should follow the clear import of statutory language. Fedders Financial Corp. v. Director, Division of Taxation, 96 N.J., at 385, 476 A.2d 741. Neither N.J.S.A. 54:10A-4(k)(l) nor N.J.S.A. 54:10A-4(d) contains an express requirement of record ownership. Sec. 4(k)(l) refers to “ownership of investment” and Sec. 4(d)(1) speaks in terms of “total combined voting power.” Therefore, to aid in interpreting the statute, we look beyond its words to examine, first, the Legislature’s purpose in adopting the 80%-of-ownership-of-investment requirement, and second, the ordinary and well understood meaning of ownership in the corporate world. [102 N.J. at 214-215, 507 A.2d 700]
The Court, based upon legislative history, held that “ownership of investment,” as understood in the corporate world, included stock which was in the record name of a subsidiary. Consistency requires that stock, in the record name of a subsidiary, also be attributed to the parent for purposes of debt capital.
A review of the legislative history of N.J.S.A. 54:10-4(e), gives further support to the conclusion that the phrase “stockholder or shareholder” was intended to include the equitable *502 owners of a taxpaying corporation when there is an intervening subsidiary as the holder of record.
Prior to enactment of the CBT, the State’s local taxing districts had the power to tax intangible personal property. Such taxation had fallen into ill repute, through the use of “tax lightning” by larger taxing districts in levying the tax on corporations headquartered in their area, with the ultimate resolution of many such disputes by agreements having no relationship to actual tax liability. Consequently, many large corporations moved their corporate headquarters to taxing districts which enjoyed lower property tax rates. That practice was the subject of a comment by Governor Walter E. Edge in his first annual message to the Legislature, on January 9, 1945. His statement, quoted in the preface of the Report of the Commission of Taxation of Intangible Personal Property, dated March 26, 1945, was as follows:
No state can afford to permit its tax structure to fall into the morass of inequities that marks the taxation of personal property in New Jersey. I am not in favor of new taxes. I am not in favor of unduly disturbing our business interests in these critical times. I wish to preserve any competitive advantages we may have in relation to other states. But I cannot countenance a condition that permits large blocks of personal property to escape supporting their fair share of the costs of government; or even worse, a condition that reduces our tax laws to a barter-and-sale agreement between taxpayer and public official, [at iii; citation omitted]
Joint Resolution No. 4, dated March 29, 1944, had created the Commission on Taxation of Intangible Personal Property. The commission’s 1945 report detailed its purpose:
The Commission’s purpose, therefore, has been two-fold: to remove the threat of what is commonly called “tax lightning” from intangible personal property; and to provide a sound base through which a substantial amount of this property, now legally taxable but untaxed, can be reached for tax purposes, [at XII]
The report recommended that a corporation business tax, measured by net worth, be implemented in lieu of the tax on corporate-held intangible personal property. In submitting the report recommending the CBT, the commission stated that “the proposed net worth tax, however, is intended to reflect a measure of the employment of capital in New Jersey____” Id. at 78. Also noted was an awareness that in removing the tax *503 on intangible personal property, a source of revenue was being removed from municipalities which were sorely in need of it. Following the commission’s recommendations, the Legislature enacted the CBT. See L. 1945, c. 162. The corporation business tax was a tax on net worth only.
Subsequently, on March 24, 1947, the Second Report of the Commission on State Tax Policy was submitted to the Governor and to the Legislature. In addition to proposing changes in the taxation of tangible personal property, the commission also recommended a change in the CBT, stating:
Corporations which are largely or entirely financed by borrowed capital hold assets and conduct business in the same manner as do those financed largely or entirely by equity capital. Deficit corporations exercise the same privilege to do business in New Jersey and they require the same public services as do corporations which have few or no debts.
The Commission finds that the Corporation Business Tax Act should be adjusted to provide a more suitable tax base for corporations holding substantial assets but reporting little or no net worth. While provisions of the act requiring adjustment of net worth to include debts owed to holders of 10 per cent or more of the capital stock provide some correction for discrepancies of this kind, they do not in every instance result in a suitable tax base for corporations operating entirely upon borrowed capital.... [at 101]
Acting on this recommendation, the Legislature enacted L. 1947, c. 50. That law included the present definition of “indebtedness owing directly or indirectly.” The broad language of “without limitation thereto” was also prescribed at that time.
The next meaningful amendment to the CBT was in 1958, when an income base for corporate taxation was added. That base was the “entire net income” of a corporation. Such was deemed to be the income reported to the Internal Revenue Service, plus or minus certain adjustments. Among the adjustments was the disallowance of a deduction for 90% of the interest on indebtedness owing directly or indirectly to holders of 10% or more of the aggregate outstanding shares of the taxpayer’s capital stock of all classes, except to some extent not germane to this discussion. While the income feature of the CBT is not at issue in the subject case, for reasons unexplained in the record, it must be recognized that the definition of “stockholders or shareholders” will have much more impact on *504 that feature of the CBT since, as noted in the majority opinion, the net worth basis of the CBT has been completely repealed for the privilege periods beginning after June 30, 1986. However, the income base feature of the CBT remains viable.[1]
The history of the CBT reveals that it was initiated as a corporate tax reform measure intended to supplant the tax on intangible personal property which was being abused both in its enforcement and in the manner in which major corporations were relocating to taxing districts in New Jersey in order to take advantage of lower property tax rates. After it had been in effect for two years, the Commission on State Tax Policy realized that the method by which corporations were being taxed permitted the avoidance of corporate tax responsibility by corporations utilizing debt capital rather than equity capital. Accordingly, the subject provision was enacted. The basis for such enactment, together with the wording utilized in its enactment, is a clear indication that the Legislature was concerned with those corporations which were largely or entirely financed by borrowed capital and which were conducting business in the same manner as New Jersey corporations financed by equity capital. The former corporations were enjoying the same privileges in doing business in New Jersey, as well as enjoying the same public services as the other corporations. However, they were escaping their fair share of corporate taxation. In order to equalize the corporate tax burden, the provisions for including debt capital in net worth were enacted. These amendments included N.J.S.A. 54:10A-4, to ensure proper distribution of that tax burden.
The history of the CBT supports the proposition that “stockholder or shareholder,” as used in the definitional portion of the *505 CBT, was never intended to be restricted to the legal title owner to the exclusion of an indirect title holder. Rather, the phrase “without limitation thereto” was used in defining indebtedness owing directly or indirectly in order to assure that corporations using debt capital properly assumed their corporate tax responsibility. Consequently, the definition of stockholder or shareholder should properly include the immediate grandparent of a third-tier subsidiary when it is the recognized controller and equitable owner of the stock interest in a corporation using debt capital in New Jersey in competition with other corporations utilizing investment capital.
In addition to the above, there exists a well-settled principle that an administrative construction of a statute with which the Legislature has not interfered over a period of time is proof that the administrative interpretation conforms with the legislative intent, and is thus accorded great weight. Body-Rite Repair Co. v. Taxation Div. Director, 89 N.J. 540, 545-546, 446 A.2d 515 (1982); Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984). This principle is particularly applicable here, since Regulation 16:10-3.140, promulgated on January 1, 1959, specifically provided as follows:
In the case of a creditor, corporate or otherwise (other than an individual), including an estate, trust, or other entity, indebtedness, if not includable by reason of direct ownership of taxpayer’s stock by such creditor, shall be includable if both the taxpayer and the creditor are substantially owned or controlled directly or indirectly by the same interest____
That regulation, or successors to the same effect, have been in existence for nearly 30 years. During that time, the CBT has had at least 14 legislative amendments. See listing at the end of N.J.S.A. 54:10A-4.
I would find, based upon the required expansive wording of the definition of “indebtedness owing directly or indirectly,” the legislative history, as well as the period of time during which the Director has interpreted the words “stockholder or shareholder,” that such words include both corporate parents and grandparents when their subsidiaries are the record shareholders.
I would affirm the Director’s determination.

The importance of the subject issue in computing the income tax base is apparent when it is recognized that under similar factual circumstances, the majority opinion would permit the interest paid on the subject indebtedness to be fully deductible in computing the CBT income base. The grandparent herein is a Nevada corporation. Nevada is a state which has no corporate business income tax, thus, the ideal tax planner’s situation.