[No. 267-3.    Division Three.    August 6, 1971.]

MANUFACTURERS ACCEPTANCE CORPORATION, *Respondent,* v. PENNING'S SALES, INC., *et al., Defendants,* WALTER N. BOYSEN COMPANY, *Appellant.*

*Mullin, Gigler & Etter* and *Roger K. Gigler,* for appellant.

*Morrison, Huppin, Ewing & Anderson, D. N. Morrison,* and *Fred J. Caruso,* for respondent.

GREEN, J.—This case involves the application of the Uniform Commercial Code. Plaintiff, Manufacturers Acceptance Corporation, recovered a money judgment against defendants, Penning's Sales, Inc., d/b/a Decorators Corner, Edward B. and Marilyn M. Penning, and Walter N. Boysen Company. From this judgment, defendant Boysen appeals.

The sole issue presented is the priority of conflicting interests in certain inventory as between the plaintiff and defendant Boysen. The trial court held plaintiff's interest to be superior. We agree.

Prior to July, 1967, defendants Penning, as sole proprietors operated a retail paint store in Spokane under the name of "Penning's C & C Paints." From the early 1960's, Pennings were financed by plaintiff. To evidence the financing they executed notes secured by a chattel mortgage covering inventory, goods in stock and equipment in the store. The mortgage contained an after-acquired property clause. On July 1, 1967, the effective date of the Uniform Commercial Code, and pursuant thereto, Pennings executed and delivered to plaintiff a security agreement containing an after-acquired property clause, together with a financing statement covering the same items. At this time, defendants, having changed their name, were doing business in the same manner under the name "Decorators Corner."

Pennings became dissatisfied with their supplier of paints. On February 9, 1968, they entered into an agreement with a new supplier, Boysen. While not openly evi-

dent to third parties, the effect of this agreement was to change the internal operation of Decorators Corner. The retail sale of paint and supplies would be continued in the front portion of the store. However, contrary to past operations, Pennings would no longer have title to the goods in the storage area. Under the new agreement, Boysen would ship paint to itself in care of Decorators Corner, reserving title. This paint was to be held in the storage area subject to the order of Boysen who would direct Pennings to ship the paint for them to one of their dealers in eastern Washington or northern Idaho. For this service Pennings would be paid 6 per cent of each order shipped or delivered to a Boysen account. Purchases by Decorators Corner from this inventory would be handled in the same manner as a sale by Boysen to any of their other dealers.

On February 21, 1968, an inventory of paint was shipped by Boysen to Boysen in care of Decorators Corner and stored in the rear portion of the premises. No signs were posted indicating the inventory was the property of Boysen. The record shows the retail and storage portion of the premises appeared to be operated in the same manner after the shipment from Boysen as it was before the shipment.

On March 13, 1968, the Penning business was incorporated under the name of Penning's Sales, Inc. It continued to do business under the assumed name of Decorators Corner. On April 4, 1968, a security agreement was executed between Penning, as manager of Decorators Corner, and Boysen. A financing statement was filed covering the Boysen inventory. On April 12, 1968, Penning's Sales, Inc., d/b/a Decorators Corner, executed a security agreement in favor of plaintiff and a financing statement was filed.

It was not until February 17, 1970 that Boysen posted signs indicating the inventory stored in the rear of the store was Boysen's property. Because neither Penning's Sales, Inc. nor Penning were able to meet their obligations to plaintiff, this action was instituted on March 20, 1970. Plaintiff and Boysen stipulated that plaintiff had prior rights to the items located in the front of the store. They

could not agree as to priority of rights to the inventory stored in the rear of the store. However, it was agreed that if plaintiff was found to have prior rights, a money judgment could be entered against Boysen for the value of the inventory. The trial court held plaintiff had priority and accordingly judgment was entered against Boysen for $6,351.93 plus attorney's fees and costs. In doing so, Boysen contends, the trial court committed error.

■   The priority of rights to the inventory as between plaintiff and Boysen depends upon the status of the goods stored. As between Decorators Corner and Boysen, the status of the goods is governed by their letter agreement of February 9, 1968, which reads in pertinent part as follows:

> THIS IS AN AGREEMENT FOR WAREHOUSING AND SHIPPING PAINTS AND SUNDRIES OWNED AND SUPPLIED BY THE WALTER N. BOYSEN COMPANY, DIVISION OF THE GROW CHEMICAL CORPORATION, AND THE DECORATOR'S CORNER, OWNED AND MANAGED BY MR. E. B. PENNING.
>
> 1. The Walter N. Boysen Company will consign to the warehouse of Decorator's Corner located in Spokane, Washington sufficient paints of their manufacture, as well as prescribed paint sundries to cover the needs of existing Boysen dealers in areas later defined, as well as supplying the needs of new customers to be sold in Eastern Washington and Northern Idaho areas.
>
> 2. The above mentioned paints and sundries will be the property of the Walter N. Boysen Company and will be shipped to the account of Walter N. Boysen Company, care of Decorator's Corner, Spokane, Washington.
>
> .   .   .
>
> 4. The Decorator's Corner will be solely responsible for all inventory on hand in their warehouse. Any shortages existing will be billed to the Decorator's Corner by the Walter N. Boysen Company.
>
> .   .   .
>
> 6. This arrangement is an exclusive plan with the Walter N. Boysen Company wherein no other paint materials except Boysen paints will be handled by Decorator's Corner, except those the Walter N. Boysen Company is unable to furnish and only when the request for such material has been sent to the Boysen Company and rejected.
>
> 7. The territory to be serviced by the Decorator's Cor-

ner for the Walter N. Boysen Company shows in red on the map attached to this agreement. Decorator's Corner will be furnished a list of all accounts now existing in the areas concerned.

Boysen contends this agreement is a warehousing agreement and not an agreement for resale on commission because Boysen reserved title to the goods. Therefore, Boysen argues, the goods were not subject to the claims of Decorators Corner creditors. On the other hand, plaintiff contends Boysen's goods were held by Decorators Corner on sale or return within the meaning of RCW 62A.2-326(2), (3) and since the exceptions were not fulfilled the goods are subject to the claims of Penning's creditors. RCW 62A.2-326 entitled "Sale on approval and sale or return; consignment sales and rights of creditors" provides in part:

(2) Except as provided in subsection (3), goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.

(3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum".

Official comment 2 to this section of the code states in part:

[S]ubsection (3) resolves all reasonable doubts as to the nature of the transaction in favor of the general creditors of the buyer. As against such creditors words such as "on consignment" or "on memorandum", with or without words of reservation of title in the seller, are disregarded when the buyer has a place of business at which he deals in goods of the kind involved.

RCWA 62A.2-326, Comment 2. Commenting upon subsection

(3), A. Anderson, Uniform Commercial Code § 2-326:6 states:

> With respect to the creditors of the buyer, a delivery to him of goods, *regardless of its intended character between the parties, is treated as a sale or return when the buyer is a regular dealer in that kind of goods.* This is so when the goods are delivered for sale to a person who maintains a place of business at which he deals in goods of the kind involved under any name other than the name of the seller or person making the delivery.
>
> The effect of the foregoing rule of law is that the goods delivered to such a buyer-dealer are subject to the claims of his creditors, notwithstanding that the agreement purports as between the seller and buyer to reserve title to the seller or person making the delivery until payment or resale, or states that the delivery is "on consignment," "on memorandum," or employs similar words.

(Footnotes omitted. Italics ours.) See also *Commercial Transactions: UCC Section 2-326 and Creditors' Rights to Consigned Goods,* 65 Colum. L. Rev. 547 (1965). The record is clear Decorators Corner was dealing in goods of the kind involved in the inventory stored on the premises. We are of the view the transaction constituted a sale or return of goods under RCW 62A.2-326(3) unless this statute is rendered inapplicable by Boysen's performance of an act bringing it within one of the provided exceptions.

These exceptions are set forth in RCW 62A.2-326(3) as follows:

> However, this subsection is not applicable if the person making delivery
>
> (a) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or
>
> (b) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or
>
> (c) complies with the filing provisions of the Article on Secured Transactions (Article 9).

Although Boysen had been shipping goods in care of Decorators Corner for 2 years, no sign evidencing their interest

was placed on the inventory by Boysen until about 30 days before plaintiff brought this action. Likewise, there is insufficient evidence to establish that Decorators Corner was generally known by its creditors to be substantially engaged in selling the goods of others. *Cf. Guardian Discount Co. v. Settles,* 114 Ga. App. 418, 151 S.E.2d 530 (1966); 17 A.L.R.3d 1010, 1127, 1128 (1968). Decorators Corner had always been in the retail business until the agreement with Boysen. While there is some evidence an unsigned copy of the proposed agreement was shown to one of plaintiff's representatives, plaintiff was never notified this agreement was executed. Under the statute, it is incumbent upon the seller (Boysen) to establish that Decorators Corner was generally known by its creditors to be substantially engaged in selling the goods of others. Therefore, subsections (a) and (b) of RCW 62A.2-326(3) are not effective.

Since Boysen filed a financing statement on April 4, 1968 and plaintiff did not file its financing statement until April 12, 1968, Boysen contends its rights are prior under RCW 62A.9-312(5) which provides:

> (5) *In all cases not governed by other rules stated in this section* (including cases of purchase money security interests which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), priority between conflicting security interests in the same collateral shall be determined as follows:
>
> (a) in the order of filing if both are perfected by filing, regardless of which security interest attached first under RCW 62A.9-204(1) and whether it attached before or after filing; . . .

(Italics ours.) On the other hand, plaintiff contends subsection (3) of RCW 62A.9-312 applies and that subsection (5) is therefore inapplicable. With plaintiff's contention, we agree.

RCW 62A.9-312 provides:

> (3) A purchase money security interest in inventory collateral has priority over a conflicting security interest in the same collateral if
>
> (a) the purchase money security interest is perfected

at the time the debtor receives possession of the collateral; and

(b) any secured party whose security interest is known to the holder of the purchase money security interest or who, prior to the date of the filing made by the holder of the purchase money security interest, had filed a financing statement covering the same items or type of inventory, has received notification of the purchase money security interest before the debtor receives possession of the collateral covered by the purchase money security interest; and

(c) such notification states that the person giving the notice has or expects to acquire a purchase money security interest in inventory of the debtor, describing such inventory by item or type.

A purchase money security interest is defined in RCW 62A.9-107 as follows:

A security interest is a "purchase money security interest" to the extent that it is

(a) taken or retained by the seller of the collateral to secure all or part of its price; . . .

Under the letter agreement with Decorators Corner, Boysen, as seller, retained title to the goods. It seems obvious the retention of title was for the purpose of securing all or part of the price. The parties do not dispute that under RCW 62A.9-312 the goods constituted inventory collateral within the meaning of RCW 62A.9-105[1] and RCW 62A.9-109.[2] Having determined that Boysen retained a purchase money security interest in the inventory, subsection (3) of RCW 62A.9-312 applies; subsection (5) is rendered inapplicable by its own language.

■ In order for a purchase money security interest in inventory collateral to have priority over a conflicting secu-

---

[1]RCW 62A.9-105 provides: "(c) 'Collateral' means the property subject to a security interest, and includes accounts, contract rights and chattel paper which have been sold; . . ."

[2]RCW 62A.9-109 provides: "Goods are

"  . . .

"(4) 'inventory' if they are held by a person who holds them for sale . . . "

rity interest in the same collateral, the one holding the purchase money security interest must have perfected it at the time the debtor receives possession of the collateral. In addition, before the debtor receives possession of the collateral, the holder of the purchase money security interest must notify in proper form any secured party whose interest is known to the holder or who has a financing statement on file. RCWA 62A.9-312, Comment 3; *McDonald v. Peoples Auto. Loan & Fin. Corp.*, 115 Ga. App. 483, 154 S.E.2d 886 (1967); 30 A.L.R.3d 9, 109-10 (1970); 1 Anderson, Uniform Commercial Code § 9-312: 7. There is no evidence that Boysen complied with these provisions. Therefore, Boysen's April 4 filing was ineffective for the purpose of establishing priority. RCWA 62A.9-312, Comment 3, states:

> While this Article broadly validates the after-acquired property interest, it also recognizes as sound the preference which prior law gave to the purchase money interest. That policy is carried out in subsections (3) and (4).

Boysen could have taken prior to the security interest of plaintiff had it perfected it at the time Decorators Corner received possession of the collateral and notified plaintiff of its interest. Not having done this, the after-acquired property clause contained in plaintiff's 1967 financing statement has priority over the conflicting claim of Boysen.

■ Boysen's contention that new value was not given at the time plaintiff filed its financing statement on July 1, 1967 as required by RCW 62A.9-108 is without merit. This financing statement was filed by plaintiff to conform the prior filing of the chattel mortgage to the provisions of the Uniform Commercial Code. In this situation it is only necessary that value be given in the prior dealings between the parties. *United States v. Big Z Warehouse*, 311 F. Supp. 283 (S.D. Ga. 1970); RCW 62A.1-201(44)(b); see also RCWA 62A.9-108, Comments.

Boysen also contends that because a representative of plaintiff saw a draft of an unsigned agreement between Boysen and Decorators Corner, plaintiff is estopped from

510

asserting its prior rights. We disagree. There is no evidence that plaintiff was ever advised by anyone the agreement between Boysen and Decorators Corner was ever executed or put in effect. Under RCW 62A.9-312(3) Boysen was required to make known to plaintiff its interest in the goods. We believe there are insufficient facts to bring into play the doctrine of estoppel. To the contrary, there are sufficient facts to indicate that plaintiff at all times was acting in good faith as defined in RCW 62A.1-201 (19).

Judgment affirmed.

MUNSON, C.J., and EVANS, J., concur.