**In re STN ENTERPRISES, INC., d/b/a Atwater Arms, Debtor.**

**Bankruptcy No. 84–00098.**

United States Bankruptcy Court,
D. Vermont.

Dec. 12, 1984.

Christopher L. Davis, Burlington, Vt., for Richard Erdman.

Steven Gates, Glenmont, N.Y., and John Canney, III, Rutland, Vt., for debtor.

Jerome I. Meyers, Norwich, Vt., for Creditors Committee.

Robert Woolmington, Bennington, Vt., for Kenneth Cestone.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

This matter is before the Court on the Motion of Richard Erdman for Relief from Automatic Stay and for possession of a belt pistol.

## BACKGROUND

STN Enterprises, Inc., is a corporation which was organized on August 6, 1982. It has been engaged in the purchase and sale of collectible firearms and related collectibles doing business as "Atwater Arms." Stephen T. Noyes was its president and sole stockholder. The directors were Stephen T. Noyes, Janice Noyes, his wife, and John W. Wilkinson. The driving force behind the corporate business was Stephen T. Noyes and it was conducted solely by him, although the corporation retained the services of Wayne D. Wetzel, Jr., as a consultant from October, 1983 until May, 1984. Noyes did all of the buying and selling and was in charge of all negotiations, whereas Wetzel took on the duties of an administrator supervising the accounting and insurance program and assisting Noyes in the investment program relating to the so-called San Antonio Collections involving the purchase of 77 individual antique firearms. Noyes died on May 5, 1984 as the result of injuries received in an automobile accident, and for several weeks prior to his death STN Enterprises, Inc., was having financial difficulties. These apparently precipitated the filing of a Petition for Relief under

Chapter 11 of the Bankruptcy Code on June 28, 1984. The Schedules show total liabilities of $12,989,844.35 and assets of $5,284,415.05. Included in the assets are Bennington firearms inventory and Greenwich firearms inventory, listed at an estimated market value without forced sale of $2,500,000.00 and $1,500,000.00, respectively.

The business of the Debtor was conducted from the residence of Noyes in Bennington, Vermont, where he also maintained a room for display of firearms.

## FACTS

Richard Erdman is a sculptor whose address is Williston, Vermont. He first became aware of Atwater Arms in 1983 through a friend, one Jim Ross of Armonk, New York. Ross presented to Erdman an investment opportunity with Atwater Arms concerning which he was very excited; whereupon, Erdman contacted Steve Noyes and requested information concerning the business of the Debtor. Noyes forwarded to Erdman a brochure entitled "Atwater Arms High Quality Investment Firearms" which contained detailed information concerning the nature of Atwater Arms, the investment opportunities, the marketing technique, and an example of a typical Atwater Arms transaction.

After reviewing the brochure Erdman had his first business transaction with Atwater Arms on or about September 1, 1983 when he transmitted to the Debtor a check drawn on E.F. Hutton Cash Reserve Management, Inc., account in the sum of $5,000.00 payable to the Debtor for the purchase of a Colt Revolver. As evidence of this transaction he received from Atwater Arms a receipt dated December 28, 1983 for the sum of $5,000.00 representing the purchase of one Colt Single Action Army Revolver, Serial No. 108394, for the sum of $4,807.69 plus tax of $197.31. Erdman never received the Colt Revolver, but understood that it would be resold by the Debtor and that he could expect a return on his investment which would average about 35%. The firearm was in fact sold by the Debtor and Erdman subsequently received from Atwater Arms a check dated January 14, 1984 in the sum of $6,850.00 which was earmarked "Return of Investment & Profit." This check was forwarded by Noyes to Erdman with a covering letter dated January 16, 1984 in which Noyes pointed out that investment firearms were, without question, the strongest collectibles' market in existence and concluding with the following:

"We believe that Atwater Arms offers one of the best and most unique investment vehicles to qualified clients. We appreciate your participation and look forward to a successful relationship."

Shortly after the receipt of the check of $6,850.00 by Erdman from Atwater Arms, Erdman negotiated another transaction with the Debtor in the sum of $40,000.00 for the purchase of a "Colt Belt Paterson cased set, with extra cylinder and various accessories. No. 775. No. 2 Belt pistol. With rare inlaid bands on frame. Excellent to factory new condition." As evidence of this transaction, Erdman received a receipt from Atwater Arms dated February 3, 1984 together with a letter from Noyes as president of Atwater Arms of the same date which had attached to it documentation of the transaction which, as pointed out by Atwater Arms, supported its attempt to collateralize each individual investment with an item (or items) that had a 50% greater market value.

The attachment indicated that the fair market value of the belt pistol was $55,000.00 and the letter of February 3, 1984 contained the following language:

"The investor technically does not take title to the specific firearm and therefore is further protected by the U.C.C. In strictest definition this transaction must be construed as a loan and loan repayment plus interest."

By letter dated May 18, 1984 to Richard Erdman, Steven M. Gates, Esquire, Counsel to Atwater Arms, reported on the creditors' meeting which had been held on Monday night and outlined the company's plan of action in view of the results of the

meeting and indicating that Gates had confidence that Atwater Arms could effect a fair settlement with its creditors outside of immediate bankruptcy. A claim form was enclosed with this letter and Richard Erdman submitted under date of May 24, 1984 to Atwater Arms a statement of his claim as follows:

| "Date Paid | Amount | Type of Transaction (Purchase, Loan, etc.) Item (IF ANY) |
|---|---|---|
| Feb. 3, 1984 | $40,000.00 | loan and loan repayment plus interest (San Antonio Collection) see attached" |

On July 10, 1984 Richard Erdman filed a Proof of Claim in this Court in the sum of $40,000.00 plus interest reciting the consideration as "the purchase of a gun (See Comments)" and the comments read as follows:

"Creditor owns a Colt Belt Paterson cased set with extra cylinder and various accessories and a No. 775 # 2 Belt pistol (with rare inlaid bands) These items were held by the debtor for purposes of resale. Alternatively, without prejudice to the rights of the creditor these items were collateral for the creditor's investment."

Erdman never took possession of the Colt Belt Paterson pistol and he never had any intention of doing so. No security agreement was ever executed by either the Debtor or Erdman, but the latter did receive a document from Stephen Noyes which was in fact a U.C.C. financing statement and, upon instructions from Noyes, Erdman signed it and sent it back. Erdman understood from Noyes that the execution of the U.C.C. financing statement would further secure his investment. The financing statement was never filed either in the office of the Secretary of State in Montpelier or in the office of the Town Clerk of Bennington, Vermont, where the Debtor conducted its business.

Erdman had no control over any sale of the Colt pistol by the Debtor. He was to have no input as to whom the pistol would be sold and it was his understanding that the Debtor could sell the weapon to any party whom it chose as long as the Debtor remitted the proceeds received less a commission to be charged by the Debtor. In fact, any sale of the pistol was strictly under the control and discretion of the Debtor through Noyes as its agent.

Erdman had neither a collection of guns nor a facility in which to store them. The receipt for $40,000.00 received by Erdman from the Debtor for the purchase of the Colt pistol contained a space for the inclusion of a sales tax, but it was left blank. Erdman knew that the Debtor was in the business of buying and selling firearms.

## DISCUSSION

The issue in this case is whether Erdman is the owner of the Colt Belt Paterson pistol and is entitled to reclaim possession of the Debtor.

■ The nature of a creditor's property rights in bankruptcy is defined by state law, not federal law. *Butner v. United States*, 440 U.S. 48, 54; 99 S.Ct. 914, 917, 59 L.Ed.2d 160; *In Re Skelly Jr.* (U.S. District Court—D. Delaware—1984), 38 B.R. 1000, 1001. State law also defines the nature and extent of debtor's and therefore, the estate's interest in property. *Butner v. U.S.*, supra; *In Re Abdallah* (Bankr.D.Mass.1984) 39 B.R. 384, 386; *In Re Ford* (Bankr.Md.1980) 3 B.R. 559, aff'd 638 F.2d 14 (4th Cir.1981).

Erdman contends that he actually purchased the pistol and that title to it passed to him in accordance with the provisions of the Uniform Commercial Code, as adopted in this state, and specifically 9A V.S.A. § 2–401(1) under which title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties. Erdman claims that upon payment of $40,000.00 by him to the Debtor, the terms and conditions of the purchase of the pistol were complied with and all of this was in accordance with the receipt dated February 3, 1984 which specifically indicated that the sum was paid for the purchase of the pistol.

He further argues that even though no sales tax is shown on the receipt, this is

immaterial for the reason that it is the obligation of the vendor under Vermont law to collect the sales tax.

The position taken by Erdman is disputed by the Debtor. It asserts that the $40,000.00 transaction between Erdman and the Debtor was actually a loan with a resulting security interest being created in favor of Erdman. Since the Debtor retained possession of the weapon and there was a failure of the filing of a financing statement, the security interest was not perfected and, therefore, Erdman has no right to reclaim the pistol from the Debtor.

The Debtor's position is supported by the letter of February 3, 1984, from Stephen T. Noyes to Erdman in which he specifically states that the investor does not take title to the specific firearm and, therefore, is further protected by the U.C.C. and that in the strictest definition, the transaction must be construed as a loan and loan repayment plus interest.

Further, in the claim submitted to the Debtor by Erdman on May 24, 1984, he refers to the transaction of February 3, 1984 in the amount of $40,000.00 as a "loan and loan repayment plus interest (San Antonio collection) See attached." Likewise, in the proof of claim filed in this Court on July 10, 1984, Erdman while stating that he owned the Colt Belt Paterson pistol went on to recite that "alternatively without prejudice to the rights of the creditors these items were collateral for the creditor's investment." All of this would tend to establish that Erdman recognized this transaction as one involving a security interest.

From the testimony of Erdman the Court is convinced that he was not particularly interested in the forms of the transactions which he had with the Debtor, and this might have been a factor in his decision not to employ legal counsel. It appeared clear to the Court that his primary and only concern was in achieving profit from his investments with the Debtor. This was the bottom line.

The result is the same whether the $40,000.00 transaction as to the Colt Belt Paterson pistol was in fact a loan resulting in a security interest in Erdman's favor or a sale of the weapon by the Debtor to Erdman with possession remaining with the Debtor for the purpose of resale. In either event, Erdman cannot prevail.

■ Under the Uniform Commercial Code as adopted in this state, a security interest can only be perfected by the filing of a financing statement both in the office of the town clerk where the debtor has its place of business (Bennington, Vermont) and in the office of the secretary of state. There was no such filing. As a result, a trustee in bankruptcy takes priority over an unperfected security interest. 9A V.S.A. § 9–301(3). Under § 544 of the Bankruptcy Code, a trustee becomes a lien creditor as of the date of the filing of the petition for relief. Since there was no filing of a financing statement by that date, the trustee as a lien creditor prevails over any rights in the pistol asserted by Erdman. The trustee's position may likewise be maintained by the debtor, who, under § 1107 of the Bankruptcy Code acquires the same rights of a trustee in bankruptcy.

■ Likewise, even assuming that Erdman did in fact purchase the Colt Belt pistol from the Debtor and permitted it to remain in its possession for resale, he is not now entitled to reclaim it.

Under the Uniform Commercial Code, where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum." However, this subsection is not applicable if the person making delivery

(a) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or

(b) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or

(c) complies with the filing provisions of the article on Secured Transactions (article 9).

9A V.S.A. § 2–326(3).

Since Erdman knew that the Debtor was conducting business under its own name before he can reclaim the pistol he must establish that his ownership was evidenced by a sign or that the Debtor was conducting his business in a manner generally known by his creditors to be substantially engaged in selling goods of others or that he complied with the filing requirements relating to the financing statements. At the hearing he introduced no evidence tending to establish any of the foregoing alternatives and, therefore, he has not sustained the burden required of him.

The case law also supports the Debtor. See *Manufacturers Acceptance Corporation v. Pennington Sales, Inc.* (1971) 5 Wash.App. 501, 487 P.2d 1053; *In Re International Mobile Homes of Johnson City, Inc.* (Bankr.E.D.Tenn.) 1 B.C.D. 131, 134; *In Re Maurice Lipsky Music Co., Inc.,* (Bankr.S.D.N.Y.1976) 2 B.C.D. 371; *In Re Wicaco Machine Co., Inc.* (Bankr.E.D.Pa.1984) 37 B.R. 463. See also 67 Am. Jur.2d 423 § 282.

Erdman has submitted for consideration in support of his position *Allsop v. Ernst* (Bankr.S.D.Ohio 1982) 20 B.R. 627; *Manger v. Davis* (Utah 1980) 619 P.2d 687; *Newhall v. Haines* (D.C.Mont.1981) 10 B.R. 1019. The Court has considered these cases and the facts in each of them are clearly distinguishable from those under consideration herein and for that reason are not apposite.

## ORDER

In view of the foregoing,

IT IS ORDERED that the Motion of Richard Erdman for Relief from Automatic Stay and to reclaim possession of the Colt Belt Paterson pistol filed July 10, 1984 is DENIED.