**In re STN ENTERPRISES, INC., d/b/a/ Atwater Arms, Debtor.**

**Bankruptcy No. 84–00098.**

United States Bankruptcy Court, D. Vermont.

Dec. 14, 1984.

R. Marshall Witten, Bennington, Vt., for Kenneth Cestone.

John R. Canney, III, Rutland, Vt., and Holly K. Nelson, West Pawlet, Vt., for debtor.

Jerome I. Meyers, Norwich, Vt., for Creditors' Committee.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

The issue before the Court is whether Kenneth Cestone is entitled to recover from the Debtor two Colt Revolvers under his Motion for Reclamation filed July 31, 1984. Both the Debtor and the Committee of Unsecured Creditors oppose this Motion.

### FACTS

The Debtor, STN Enterprises, Inc., was organized as a corporation on August 6, 1982 for the purpose of engaging in the purchase and sale of collectible firearms and related collectibles under the trade name of "Atwater Arms." Stephen T. Noyes was its president, sole stockholder and the driving force behind the corporate business. The corporation also conducted an investment program which included the so-called San Antonio Collection involving the purchase of 77 individual antique firearms. Noyes died on May 5, 1984 as a result of injuries received in an automobile accident, and for several weeks prior thereto, the Debtor was having financial difficulties. These apparently precipitated the filing of a Petition for Relief on June 28, 1984 under Chapter 11 of the Bankruptcy Code. The Schedules show total liabilities of $12,989,844.35 and assets of $5,284,415.05. Included in the assets are Bennington Firearms inventory and Greenwich Firearms inventory, listed at an estimated market value without forced sale of $2,500,000.00 and $1,500,000.00, respectively.

Kenneth Cestone is a practicing physician in Bennington, Vermont, and he had known Mr. Noyes for close to 20 years and, since they lived close to each other, Dr. Cestone would see Noyes at least every week. As a result of this acquaintanceship, Dr. Cestone became interested in the purchase and sale of firearms and prior to August 26, 1983, he had consummated about nine or ten transactions with the Debtor. These were all handled by Noyes under a loose arrangement whereby Dr. Cestone would tender money to Noyes for the purchase of firearms and a resale of them by the Debtor. These transactions commenced in 1982 and Dr. Cestone left the purchase and sale of the firearms entirely to the judgment of Noyes. Cestone never checked the price paid for the particular firearm. Noyes would arrange for the sale and several months later Cestone would receive a check which included the profit from the transaction. Cestone never saw the particular weapon purchased. He considered the transactions investments as he was trying to build up a college fund for his children.

On August 26, 1983, Cestone turned over to the Debtor the sum of $20,000.00 as a participating share interest in a 5 Month— Combined Winchester Rifle/Colts SAA Revolver Collection. As evidence of this transaction the Debtor delivered to Cestone

a receipt which carried the note "Item for Collateralization 1—Colt SAA Revolver Serial # 259641" and indicated a charge of $19,230.77 for the share in the revolver with tax of $769.23 for a total of $20,000.00.

At the same time, Cestone received a "Purchase Fact Sheet" from the Debtor indicating that the specific item covered was 1—Colt SAA Revolver Serial # with the terms being 90%—5 months and a 10% commission of resale. The total purchase was shown as $20,000.00 on 8–26–83 with a remittance date on or before 1–26–84.

Even though remittance was due on January 26, 1984, payment was not made by the Debtor until March 4, 1984 with Cestone receiving a check from it in the sum of $32,192.00 in return for his investment of $20,000.00. The payment was delayed due to the fact that Noyes had been in a plane crash and was hospitalized for some time. Cestone had no control over this transaction and he left it entirely to the discretion of Noyes.

On August 26, 1983, Cestone turned over to the Debtor the sum of $17,160.00 for the purchase of 1—Colt SAA Revolver Serial # 336281 for the sum of $16,500.00 with tax of $660.00 representing a total of $17,160.00. This payment was made by check dated 8/26/83 in the sum of $17,160.00 payable to Atwater Arms.

On March 7, 1984, Cestone turned over to the Debtor by check of the same date the sum of $20,000.00 for the purchase of 1—Colt 1851 Navy Model Revolver Serial # 48106 engraved by Gustave Young Shop with only known inscription "Langdon's Express." On the same date the Debtor delivered to Cestone a "Purchase Fact Sheet" defining the item as "1—Colt 1851 Navy Revolver Serial # 48106" with the terms "1 yr. plus program designed to provide a long-term positive gain through the resale of the aforementioned item" and commission of 10% of resale. The purchase price was given as $20,000.00 on 3–7–84 with a remittance date by 3–25–85.

On July 15, 1984, Cestone filed a Proof of Claim in this Court in the sum of $67,-160.00 with the consideration recited as "bills of sale for One 1851 Navy Colt Revolver, Serial No. 48106, one 1917 44–caliber Single Action Army Colt Revolver, Serial No. 336281 and a participating share interest in the purchase of a multi-unit percussion revolver collection, copies of which Bills of Sale are attached hereto." This proof covered the purchase price of the aforesaid revolvers together with the payment of $30,000.00 by Cestone on March 7, 1984 for a participating share in the purchase of a multi-unit percussion revolver collection. The proof also recited that Cestone claimed a security interest under the writings constituting the bills of sale.

Cestone was fully aware that the Debtor was engaged in the purchase and sale of firearms; that Noyes maintained a showroom and office in the basement of his house in Bennington, Vermont, which he had visited on several occasions; that it was generally known in and around Bennington that the Debtor was engaged in the purchase and sale of firearms; that Noyes co-mingled guns; that there were about 75 guns on display in the showroom; that the guns which he purchased had no identification marks on them as to ownership.

Prior to Cestone's transaction with the Debtor on August 26, 1983, for the purchase of a Colt Revolver, Cestone had received a profit on all of his previous transactions with the Debtor. No security agreements or financing statements were executed in connection with the foregoing transactions, and none was filed either in the office of the Town Clerk of Bennington where the Debtor conducted business or in the office of the Secretary of State in Montpelier.

The two revolvers claimed by Cestone are part of the inventory of the Debtor and there is nothing in its records to show that Dr. Cestone has any ownership interest in them.

## DISCUSSION

Dr. Cestone is claiming title to the two revolvers as bailed property. He contends

that the transactions involving these weapons were "true bailments."

■ In bankruptcy, his rights in the guns as a creditor are defined by state law, not federal law. *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136; *In Re Skelly Jr.* (U.S. District Court—D. Delaware—1984), 38 B.R. 1000, 1001. State law also defines the nature and extent of debtor's and therefore, the estate's interest in property. *Butner v. U.S.*, supra; *In Re Abdallah* (Bankr.D. Mass.1984) 39 B.R. 384, 386; *In Re Ford* (Bankr.MD.1980) 3 B.R. 559, aff'd 638 F.2d 14 (4th Cir.1981).

In this state, the pertinent sections of the Uniform Commercial Code, as adopted, control both the rights of Cestone and of the Debtor. These will be considered as they apply to the established facts.

Dr. Cestone testified that upon purchase of these two revolvers it was his intention to start a collection and that Noyes wanted him to take possession, which he declined to do because he did not want them around the house. Further, he felt that the Debtor had means of keeping them safely in the vault. The Court is not convinced that this in fact was the situation.

Dr. Cestone had known Noyes for about 20 years and he started dealing with him in 1982. He was on a very friendly basis with him and he saw him at least once a week. He trusted Noyes and the arrangement that he had with him was to turn over money for the purpose of purchasing weapons, giving Noyes complete authority to sell them and turn over whatever profit he received. The primary object of his investment was to realize sufficient profit to establish a college fund for his children and at the same time realize a tax shelter under the Internal Revenue Code.

On August 26, 1983, when Dr. Cestone purchased the Colt S.A.A. Revolver, he also invested $20,000.00 for a participating share interest in a five-month Combined Winchester Rifle/Colt S.A.A. Revolver Collection. The purchase fact sheet received by Dr. Cestone as to this purchase indicated that the remittance date would be on or before 1–26–84, but it was not until March 4, 1984 that he received a check from the Debtor in satisfaction of his investment in the sum of $32,192.00. He testified that he was not concerned in the delay of payment from January 26, 1984 because he trusted Noyes.

■ The course of dealing between the two parties clearly indicates that Dr. Cestone was actually not interested in the purchase of specific weapons to start a collection. He was merely concerned with the net result; i.e., profit, and the Court is convinced that he actually purchased the two revolvers which he seeks to reclaim for resale by the Debtor, although there was no purchase fact sheet delivered by Noyes to Dr. Cestone with the receipt for the Colt S.A.A. Revolver, Serial No. 336281, which indicated authorization for resale by the Debtor. The Court is convinced that such was the fact.

As to the Colt 1851 Navy Colt Revolver, Serial No. 48106, the purchase fact sheet received by Dr. Cestone from the Debtor clearly indicates that Dr. Cestone was involved in a one-year plus program designed to provide a long-term positive gain through the resale of the weapon with a commission of 10% of resale and a remittance date by 3–25–85. This clearly contradicts the testimony of Dr. Cestone that the weapon was purchased to be retained by him as part of a collection.

The Debtor did in fact engage in "true bailment" transactions with other parties. In these cases, Noyes did transmit to these parties written bailment agreements which were executed by both parties, and in proceedings against the Debtor instituted by some of them to reclaim the weapons, the Court has rendered decisions construing the transactions as true bailments and has ordered the weapons delivered by the Debtor to the claimants.

If a true bailment were intended in each of the transactions relating to the two weapons under consideration, Noyes would have transmitted to Dr. Cestone a written bailment agreement to be executed by the

parties, especially in view of the fact that they were on such a friendly basis. With this relationship, Noyes would have all the more reason to protect the ownership of the weapons by Dr. Cestone under such a written bailment agreement.

Under the circumstances, the Court is convinced that the transactions as to these two weapons were not true bailments.

Since the weapons were left in the possession by Dr. Cestone for resale, the transactions are governed by § 2–326(3) of the Uniform Commercial Code, which reads as follows:

"Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum." However, this subsection is not applicable if the person making delivery

"(a) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or

"(b) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or

"(c) complies with the filing provisions of the Article on Secured Transactions (Article 9)."

Under the above section if Dr. Cestone is to prevail he must establish that there is applicable law in this state providing for a consignor's interest or the like to be evidenced by a sign, (The Court is not aware of any such law.) or that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or he has complied with the filing provisions relating to secured transactions. At the hearing Dr. Cestone introduced no evidence tending to establish any of the foregoing alternatives and, therefore, he has not sustained the burden required of him.

The case law also supports the Debtor. *See Manufacturers Acceptance Corporation v. Penning's Sales, Inc.* (1971) 5 Wash.App. 501, 487 P.2d 1053; *In Re International Mobile Homes of Johnson City, Inc.* (Bankr.E.D.Tenn.) 1 B.C.D. 131, 134; *In Re Maurice Lipsky Music Co., Inc.* (Bankr.S.D.N.Y.1976) 2 B.C.D. 371; *In Re Wicaco Machine Co., Inc.* (Bankr.E.D. Pa.1984) 37 B.R. 463. See also 67 AmJur 2d 423 § 282.

Under Section 544 of the Bankruptcy Code a trustee in bankruptcy, as of the commencement of a case, has the rights and powers of a judicial lien creditor on all property on which a creditor could have obtained a judicial lien, whether or not such a creditor exists. By virtue of § 1107 a debtor in possession has the same rights. These place the debtor in a superior position to that of Dr. Cestone as to the two revolvers.

The Court does not agree with the Debtor that the transactions between it and Dr. Cestone were "executory contracts," and the Court has set forth the reasons for this conclusion in the Memorandum Opinion relating to the Motion of Fellers to reclaim firearms entered in this case on December 11, 1984.

Even though the Court does not consider the transactions "executory contracts," the Debtor is entitled to prevail.

### ORDER

In view of the foregoing,

IT IS ORDERED that the Motion of Dr. Kenneth Cestone to reclaim the 1851 Navy Colt Revolver, Serial No. 48106, and a 1917 44–Caliber Single Action Army Colt Revolver, Serial No. 336281, filed July 31, 1984, is DENIED.